IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Jonathon Rowles, Sarah Letts-Smith, ) and Martin Hupfl, individually and ) as class representatives of others ) similarly situated, ) ) Plaintiffs, ) ) v. ) ) Chase Home Finance, LLC, and ) Chase Auto Finance Corp., ) ) Defendants. ) _____ ) | Civil Action No.: 9:10-1756-MBS <br><br><br><br><br><br> **AMENDED   COMPLAINT** <br><br> (**Jury Trial Demanded**) <br><br> (**Class Action**) |

## INTRODUCTION

1.      Plaintiff Jonathon Rowles brings this Class Action on behalf of himself and all similarly situated persons in the United States Armed Forces and other servicemembers attached thereto who, while being entitled to the protections of the Servicemembers Civil Relief Act, 50 U.S.C. App. §501 *et seq.* (hereinafter "SCRA,"), suffered violations of the SCRA at the hands of Defendants Chase Home Finance, LLC and Chase Auto Finance Corp (collectively, "Chase Defendants").

2.      The United States enacted the Servicemembers Civil Relief Act in 1940 with the intent "to provide for, strengthen, and expedite the national defense through protection extended by this Act … to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation…". 50 App. U.S.C.A. § 502(1). The SCRA extends to members of the uniformed services while on active duty. 50 App. U.S.C.A. § 511.

3.      Specific protections provided by the SCRA include: a limitation on the maximum rate of interest chargeable to servicmembers' debts incurred prior to their active duty (50 App. U.S.C.A. § 527); a prohibition against use of the SCRA's protections to affect servicemembers' future financial transactions (50 App. U.S.C.A. § 518); limitations on the ability to foreclose upon a servicemember's

1

home (50 App. U.S.C.A. § 533); and limitations on the ability to repossess personal property (such as an automobile) purchased or leased via an installment contract (50 App. U.S.C.A. § 532).

4.     This class action complaint alleges that the Chase Defendants violated all of these protections afforded to American servicemembers by the SCRA.

## PARTIES

5.     Plaintiff Jonathon Rowles is a Captain in the United States Marine Corps and is a resident of the State of South Carolina. At all times relevant to this complaint, Plaintiff Jonathon Rowles was on active duty in the United States Marine Corps or was otherwise entitled to the protections of the Servicemembers Civil Relief Act.

6.     Plaintiff Sarah Letts-Smith is a Lieutenant Colonel in the United States Army Reserve and is a resident of the State of California. At all times relevant to this complaint, Plaintiff Letts-Smith was on active duty in the United States Army Reserve or was otherwise entitled to the protections of the Servicemembers Civil Relief Act.

7.     Plaintiff Martin Hupfl is a Lance Corporal in the United States Marine Corps and is a resident of the State of Florida. At all times relevant to this complaint, Plaintiff Hupfl was on active duty in the United States Marine Corps or was otherwise entitled to the protections of the Servicemembers Civil Relief Act.

8.     Defendant Chase Home Finance, LLC is a limited liability company organized and existing under the laws of the State of Delaware and has its principal place of business at 194 Wood Avenue South, Iselin, New Jersey.

9.     Defendant Chase Auto Finance Corp. is a corporation incorporated and existing under the laws of the State of Delaware and has its principal place of business at 270 Park Avenue, New York, New York 10017-2070.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under the Servicemembers Civil Relief Act, 50 U.S.C. App. §501 et. seq.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 in that the claims arise under the laws of the United States.

12. Defendant Chase Home Finance, LLC and Defendant Chase Auto Finance Corp. conduct business in South Carolina, have entered into contracts to be performed in whole or in part in South Carolina and is subject to personal jurisdiction in South Carolina under the State's Long Arm Statute, S.C. Code Ann. § 36-2-803.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) as many of the acts and transactions forming the basis of the claims in this action occurred in substantial part in this District and Chase is a corporate entity which is subject to personal jurisdiction in this District. Venue is proper in this Division pursuant to Local Rule 3.01(A)(1) in as much as the Defendant does business relating to the events or omissions alleged in this complaint within this division.

## FACTS

### United States Marine Corps Captain Jonathan Rowles

14. Pursuant to a written agreement dated February 27, 2004, Rowles took out a purchase money mortgage (hereinafter "Loan") in the amount of $255,000.00 with BNC Mortgage, Inc., for the purchase of a home located at 5604 Spruce Ave. in Castle Rock, Colorado. BNC Mortgage assigned the Loan to Option One Mortgage Corporation in a transaction that became effective on April 1, 2004. Option One then assigned the Loan to Chase Manhattan Mortgage Corporation effective May 1, 2004. On information and belief, Defendant

Chase Home Finance, LLC is the successor in interest to Chase Manhattan Mortgage Corporation.

15. Rowles executed a United States Marine Corps reserve contract on August 16, 2005 and received Assignment to Active Duty Orders which became effective on January 22, 2006.

16. On April 14, 2006, Rowles requested in writing that Chase reduce the interest rate on the loan to 6% pursuant to the SCRA. In this letter, Rowles specified January 22, 2006 as the date he entered active duty and produced two sets of orders to verify his current status. Again on May 2, 2006, Rowles wrote to Chase to request the 6% rate protection under the SCRA. This letter also specified Rowles' active duty date and included additional copies of his orders and a copy of his previous letter.

17. In a letter dated May 8, 2006, Chase requested that Rowles provide "orders and/or an enlistment agreement showing the date of original call to duty." On June 6 and July 24, 2006, Rowles sent faxes to Chase customer service representatives that included handwritten cover sheets explaining the situation as well as copies of his letters of April 14 and May 2.

18. In a letter dated July 27, 2006, Chase informed Rowles that because he had qualified for the protection of the SCRA, the company had adjusted the interest rate on the loan to 6% effective with his May 1, 2006 payment. However, Chase failed to apply the statutory interest rate to the loan until August 17, 2006, which was the date of the first statement received by Rowles which reflected the 6% rate. The July 27 letter also informed Rowles that his "loan is protected against late fees, adverse credit reporting, and default activities. These protections will remain in effect for 90 days following your return from active duty."

14. Chase sent Rowles a letter on December 1, 2007 which it characterized as a "required quarterly verification." The letter included a form which Rowles was instructed to complete and sign in order to continue to receive the protection of the SCRA. Rowles duly completed the form and returned the letter to Chase. Chase sent additional verification letters on December 17, 2008, March 25, June 22 and December 29 of 2009 and March 22, 2010, all in violation of SCRA.

15. In addition to the periodic verification letters, no fewer than four times per year since July of 2006, Rowles has had to call various Chase customer service representatives after being verbally informed or receiving documentation indicating that the interest rate on the loan was going to be adjusted above 6% if he failed to do so. In March of 2008, Rowles was forced to request that his commanding officer at Training Squadron Eighty-Six in Pensacola, Florida, write to Chase on his behalf in order to confirm that he was in fact an active duty Marine.

16. In a letter dated January 16, 2007, Chase again informed Rowles that he had qualified for the protection of the SCRA and that the company had accordingly extended the adjustment on the 6% interest rate effective February 1, 2007. On April 2, 2008, Chase informed Rowles in writing that the company was "in receipt" of his "request for relief" under the SCRA and that he should allow three to four weeks for review of the request. A subsequent letter dated April 25, 2008, again informed him that his rate adjustment would be extended effective October 1, 2008.

17. From the time that Chase applied the 6% interest rate to the loan until April 2009, Chase would send documentation to Rowles indicating the interest rate to be at various levels substantially above 6%. On information and belief, during this time Chase would use various

5

formulas and accounting methods to reconcile the higher stated interest rates while effectively only charging Rowles at 6%.

18.     Beginning in April 2009, the loan was to shift from interest only to an amortized loan over remaining 25 years per the terms of the original agreement.  On Rowles' April 2009 statement and each subsequent statement, Chase not only failed to accurately characterize the interest rate on the loan as 6% but also ceased to employ any formula or accounting method to effectively provide Rowles with the benefit of the 6% protection under the SCRA.

19.     Each month between April 2009 and the time of this filing, Rowles made a payment to Chase in the original contractual amount, which is the last correct amount billed by Chase reflecting interest at 6%.  Despite this fact, Chase repeatedly failed to credit Rowles for payments made and began to pursue aggressive collection methods for what it characterized as a past-due balance on Rowles' account.

20.     Chase's collection methods during this time included repeated phone calls and correspondence to Rowles from Chase debt collection departments in various locations.  These calls often came at a rate of three per day and included calls to his mother who lives at a different address and his workplace as well as calls made to his residence after midnight, and as late as 4:00 a.m.  In telephone conversations, voicemails and correspondence during this time, Chase representatives repeatedly threatened to report Rowles to the credit bureaus and to initiate foreclosure proceedings on the house in Colorado.

21.     This pattern of conduct by Chase caused Rowles to spend considerable time communicating with Chase via telephone, email and written correspondence.  This time included leave from his unit which was spent traveling from South Carolina to Colorado to meet with Chase representatives in an effort to preserve his 6% interest rate under the SCRA and to prevent

Chase from taking threatened actions which are unlawful under the SCRA. In June of 2010, Chase denied Rowles electronic access to his account with Chase.

### United States Army Reserve Lieutenant Colonel Sarah Letts-Smith

22.     LTC Sarah Letts-Smith is an intelligence officer with the United States Army Reserve.

23.     On July 26, 2005, LTC Letts-Smith and her husband, Rory Smith, jointly purchased a house located at 44200 Sunset Terrace, Temecula, California, 92590. At the time of the purchase, LTC Letts-Smith was not on active duty.

24.     The purchase price of the home was $1,750,000. The purchase was financed by Washington Mutual Bank, FA, popularly known as "WaMu."

25.     For the first three years, the Smiths made all mortgage payments on time for the 44200 Sunset Terrace home.

26.     On January 29, 2008, the Department of the Army ordered LTC Letts-Smith to active duty, instructing her to report to Fort Leavenworth, Kansas for a training period of 120 days to be followed by deployment to Iraq.

27.     LTC Letts-Smith soon thereafter faxed letters to all of her creditors—including WaMu—informing them of her active duty status and requesting any and all protection afforded under the SCRA.

28.     During the summer of 2008, Rory Smith was laid off from his job, leaving his wife—who was stationed in Iraq—as the sole wage earner in the house.

29.     On August 5, 2008, Rory Smith sought assistance from WaMu in modifying the Smith family's mortgage so that payments could continue to be made. Smith informed WaMu in

writing that he had been laid off from his job, that his wife was on active duty in Iraq, and that the family was having difficulty making their mortgage payments.

30. On September 25, 2008, in the largest bank failure in American history, Washington Mutual Bank was closed by the federal government's Office of Thrift Supervision and the Federal Deposit Insurance Corporation was named receiver. Regulators simultaneously brokered a deal selling nearly all of WaMu's assets and liabilities to JP Morgan Chase.

31. On October 11, 2008, WaMu—now owned by JP Morgan Chase—responded to Rory Smith's earlier request for "Borrower Assistance" as follows.

> This letter is in response to your request for assistance on the above referenced loan. Washington Mutual received and reviewed documentation regarding a potential workout. Based on the financial information received, it does not appear we are able to offer you assistance at this time, therefore your request for a loan workout Modification has been denied.

32. On the same date, WaMu and Chase informed the Smiths via a separate letter that their line of credit was suspended. In addition to this information, the WaMu/Chase correspondence contained the following warning.

> WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS OR OTHER DEFAULTS ON YOUR ACOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.

33. On December 1, 2008, WaMu/Chase issued a "Notice of Collection Activity" to the Smiths.

> Failure to cure the default within the 30-day period may result in Washington Mutual Bank declaring the entire outstanding principal balance, accrued interest and any other fees and charges due under the terms of the Note and Security Instrument to be immediately due ("Acceleration"). If this amount is not immediately paid at such time, Washington Mutual Bank may exercise any and all remedies available under the terms of the Note and Security Instrument and applicable law, including the

8

    commencement of foreclosure proceedings which may result in the
    sale of your property.

34. On March 26, 2009, WaMu/Chase initiated foreclosure actions against LTC Letts-Smith and her family by filing a Notice of Default and Election to Sell Under Deed of Trust in Riverside County, California.

35. On July 6, 2009, WaMu/Chase filed a Notice of Trustee's Sale with Riverside County, in forming the Smiths that their home would be sold at auction on July 29, 2009.

36. LTC Letts-Smith was released from active duty on August 4, 2009.

37. On August 7, 2009, the foreclosure trustee sold the Smith family's home for $934,150.00.

### United States Marine Corps Lance Corporal Martin Hupfl

38. Martin Hupfl is currently a Lance Corporal in the United States Marine Corps stationed at NAS Jacksonville.

39. In July of 2007, LCpl Hupfl—while still a civilian—purchased a 1999 Dodge Ram truck. LCpl Hupfl financed the purchase with 72 month installment loan from Defendant Chase Auto Finance Corp. The interest rate on the Chase loan was approximately 12%.

40. In July of 2008, LCpl Hupfl enlisted in the Marine Corps. Hupfl's recruiter informed him of the protections offered by the SCRA. With the recruiter's assistance, Hupfl completed a SCRA Advice and Statement of Understanding that he signed and faxed to Defendant Chase Auto Finance Corp.

41. LCpl Hupfl entered boot camp at Parris Island, South Carolina on July 21, 2008. From boot camp Hupfl was transferred to Camp Lejeune, NC for further entry level training.

42. During this period of training, LCpl Hupfl's mother received a letter from Defendant Chase Auto Finance dated December 11, 2008 stating that Chase had finally

"processed" his SCRA request and that Chase had "reduced the interest rate to 6% and discontinued all fee accruals from the date of your military orders."

43.     LCpl Hupfl completed his entry level training on March 5, 2009 and, from there, was assigned to his first duty station in Philadelphia, Pennsylvania.

44.     When LCpl Hupfl finished his basic field training in March, 2009, he telephoned Chase Auto Finance to resume his loan payments at the original contracted amount. However, Hupfl was advised by Chase Auto Finance that it had terminated the installment loan contract in December of 2008 and therefore was unable to accept any payments from him.

45.     Soon thereafter, Chase Auto Finance assigned LCpl Hupfl's account to a collection agency that began sending him collection letters and making collection calls to his mother's house. Chase Auto Finance also reported to various credit bureaus that Hupfl's account had been "charged off as bad debt."

## CLASS ALLEGATIONS

46.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b)(3) on behalf of all those persons who have suffered violations of the SCRA after financing real and/or personal property through the Chase Defendants and subsequently invoking the protections afforded by the statute. Members of the class of plaintiffs shall be grouped into four distinct subclasses:

### Subclass One—Servicemembers Charged Illegal Interest Rates
### (Violation of 50 App. U.S.C.A. § 527)

All persons who, while entitled to protection under the Servicemembers Civil Relief Act, incurred interest on a preexisting obligation or liability owed to the Defendants at a rate in excess of 6 percent in violation of 50 App. U.S.C.A. § 527.

### Subclass Two—Servicemembers Subjected to Illegal Credit Adjustments

**(Violation of 50 App. U.S.C.A. § 518)**

All persons who, while entitled to protection under the Servicemembers Civil Relief Act, incurred detrimental adjustments to their credit as a result of the Defendants' violation of 50 App. U.S.C.A. § 518.

### Subclass Three—Servicemembers Subjected to Illegal Foreclosure
**(Violation of 50 App. U.S.C.A. § 533)**

All persons who, while entitled to protection under the Servicemembers Civil Relief Act, possessed real or personal property secured by a mortgage, trust deed, or other security in the nature of a mortgage to which the Defendant was a party that was foreclosed, sold, or seized by the Defendant in violation of 50 App. U.S.C.A. § 533.

### Subclass Four—Servicemembers Subjected to Illegal Repossession/Termination of Installment Contracts
**(Violation of 50 App. U.S.C.A. § 532)**

All persons who, while entitled to protection under the Servicemembers Civil Relief Act, were parties to a contract with the Defendant for the purchase of real or personal property or the lease or bailment of such property (as provided by 50 App. U.S.C.A. § 532): i) whose contract was rescinded or terminated by the Defendant for an alleged breach of terms of that contract; or ii) whose real or personal property subject to the contract was repossessed by the Defendant without a court order.

47.   Excluded from the Class are the Chase Defendants, their subsidiaries and affiliates, their officers, directors and employees, members of their immediate family and their legal representatives, heirs, successors or assigns and any entity in which any of the foregoing has a controlling interest.

48.   The members of the Class and of each subclass are so numerous and dispersed that joinder of all members is impracticable.

49.   Record owners and other members of the Class may be identified from the records maintained by the Chase Defendants.

50. Common questions of law and fact exist as to all members of the Class and of each subclass and predominate over any questions affecting solely individual members of the Class. Among questions of law and fact common to the Class are:

   a. Whether the Chase Defendants properly adjusted Class members' interest rates to 6% effective the dates of their first day of active duty as required by §527(b)(2) of the SCRA.

   b. Whether the Chase Defendants unlawfully attached detrimental information to the credit reports of SCRA-eligible servicemembers.

   c. Whether Chase Home Finance, LLC foreclosed upon class members' homes in violation of §533 of the SCRA.

   d. Whether Chase Home Auto Corp. terminated installment contracts and/or repossessed personal property financed by installment contracts in violation of §532 of the SCRA.

   e. Whether the Class members have sustained damages and, if so, what the appropriate measure of those damages should be.

51. Plaintiffs' claims are typical of the claims of the members of the Class and of each subclass in that they and members of the Class and subclasses which sustained damages arising out of the Chase Defendants' repeated violations of the SCRA.

52. Plaintiffs will fairly and adequately protect the interests of the members of the Class and subclasses as Plaintiffs' claims are not antagonistic to the claims of the Class and that there are no conflicts between Plaintiffs' claims and the claims of the Class members.

53. Plaintiffs have retained attorneys competent and experienced in class action litigation who have collectively obtained judgments or settlements valued at over $50 million in

class litigation during the past five years and have extensive trial and appellate experience in federal court.

54.     The Class consists of eligible servicemembers who are or have been on active duty in any branch of the armed forces of the United States as well as the commissioned corps of the National Oceanic and Atmospheric Administration and the commissioned corps of the Public Health Service.  As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable, adjudication of the controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein and there will be no difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**
**(Violation of 50 U.S.C. App. § 527—Failure to maintain the 6% rate during the servicemember's active duty status)**

55.     Plaintiffs reallege each and every allegation set forth above as if repeated verbatim herein.

56.     Plaintiff Rowles was called to active duty in the United States Marine Corps on January 22, 2006.  Plaintiff Rowles promptly notified Defendant Chase of his calling to active duty pursuant to the requirements set forth within Section 527(b)(1) of the SCRA.

57.     Section 527(b)(2) of the SCRA requires creditors to apply the 6% interest rate limitation to an eligible servicemember's debt "effective as of the date on which the servicemember is called to military service."

58.     Despite receiving prompt notification of Plaintiff Rowles' calling to active duty, Defendant Chase failed to apply the statutorily-mandated 6% rate until Rowles' August 2006 payment. Upon information and belief, Chase has invoked the same unlawful procedure for all

members of Plaintiff Class. Defendant Chase's violation of the SCRA has caused the Plaintiff and the Plaintiff Class actual damages, including consequential damages.

59. Chase is therefore liable to Plaintiff and Plaintiff Subclass One for damages including actual and punitive damages, prejudgment interest, costs and attorneys fees.

## SECOND CAUSE OF ACTION
### (Violation of 50 U.S.C. App. § 518—Unlawful reporting of SCRA servicemembers to credit bureaus)

60. Plaintiffs reallege each and every allegation set forth above as if repeated verbatim herein.

61. At all times relevant to this complaint, Plaintiffs Letts-Smith, and Hupfl informed the Chase Defendants of their active duty status and requested all protections available to servicemembers under the SCRA.

62. 50 U.S.C. App. § 518 provides that

> Application by a servicemember for, or receipt by a servicemember of, a stay, postponement, or suspension pursuant to this Act [sections 501 to 596 of this Appendix] in the payment of a tax, fine, penalty, insurance premium, or other civil obligation or liability of that servicemember shall not itself (without regard to other considerations) provide the basis for … an adverse report relating to the creditworthiness of the servicemember by or to a person engaged in the practice of assembling or evaluating consumer credit information.

63. Despite the knowledge of Plaintiffs' entitlement to SCRA protection, the Chase Defendants engaged in conduct detrimental to the credit reports of the Plaintiffs and of the members of Subclass Two. More specifically, the Chase Defendants reported negative information to the various credit bureaus regarding the Class members' mortgages and/or installment contracts subject to SCRA protection.

14

64.     The Chase Defendants' violation of 50 U.S.C. App. § 518 has negatively impacted the credit ratings of the Plaintiffs and members of Subclass Two. As a result of the Chase Defendants' malfeasance, the ability of the Plaintiffs to engage in future financial transactions has been materially damaged.

65.     The Chase Defendants are therefore liable to Plaintiff and Plaintiff Subclass Two for damages including actual damages, prejudgment interest, costs and attorneys fees.

## THIRD CAUSE OF ACTION
(**Violation of 50 U.S.C. App. § 533—Unlawful Foreclosure of Servicemembers' Homes**)

66.     Plaintiffs reallege each and every allegation set forth above as if repeated verbatim herein.

67.     50 App. U.S.C.A. § 533 provides that

> A sale, foreclosure, or seizure of property for a breach of an obligation described in subsection (a) shall not be valid if made during, or within 9 months after, the period of the servicemember's military service except—
>
> **(1)** upon a court order granted before such sale, foreclosure, or seizure with a return made and approved by the court; or
>
> **(2)** if made pursuant to an agreement as provided in section 107 [section 517 of this Appendix].

67.     At all times relevant to this complaint, Defendant Chase Home Finance, LLC possessed actual or constructive knowledge of Plaintiff Letts-Smith's entitlement to SCRA protection and that of the members of Subclass Three.

68.     Despite this knowledge, Defendant Chase Home Finance, LLC foreclosed upon Plaintiff Letts-Smith's home and the homes of the members of Subclass Three—without obtaining either a court order or a waiver—while Plaintiff Letts-Smith and the subclass members were entitled to the protections of 50 App. U.S.C.A. § 533.

69. As a direct and proximate result of Defendant Chase Home Finance, LLC's actions, Plaintiff Letts-Smith and the members of Subclass Three have been materially damaged and are entitled to an award of actual damages, punitive damages, costs and attorneys fees.

### FOURTH CAUSE OF ACTION
### (Violation of 50 U.S.C. App. § 532—Unlawful Termination of Servicemembers' Installment Contracts)

70. Plaintiffs reallege each and every allegation set forth above as if repeated verbatim herein.

71. 50 U.S.C. App. 532 provides that

> After a servicemember enters military service, a contract by the servicemember for—
>
> **(A)** the purchase of real or personal property (including a motor vehicle); or
>
> **(B)** the lease or bailment of such property,
>
> may not be rescinded or terminated for a breach of terms of the contract occurring before or during that person's military service, nor may the property be repossessed for such breach without a court order.

72. At all times relevant to this complaint, Plaintiff Hupfl and members of Subclass Four possessed installment contracts with Defendant Chase Auto Finance Corp. pertaining to the purchase or lease of an automobile and were entitled to the protections of the SCRA.

73. Defendant Chase Auto Finance Corp. violated the provisions 50 U.S.C. App. 532 by terminating the installment contracts and/or repossessing the automobiles purchased via the installment contracts of Plaintiff Hupfl and the members of Subclass Four. The termination and/or repossession inflicted material damage upon Plaintiff Hupfl and the members of Subclass Four.

74. As a direct and proximate result of the actions of Defendant Chase Auto Finance Corp., Plaintiff Hupfl and the members of Subclass Four are entitled to an award of actual damages, punitive damages, costs and attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Plaintiff Class and Subclasses, pray for relief and judgment as follows:

a. Determining that this action is a proper class action, and certifying Plaintiff Rowles as Lead Plaintiff and as Class Representative under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Rowles as Subclass Representative of Subclass One, Plaintiffs Letts-Smith and Hupfl as Subclass Representatives of Subclass Two, Plaintiff Letts-Smith as Subclass Representative of Subclass Three, and Plaintiff Hupfl as Subclass Representative of Subclass Four;

b. Awarding compensatory, consequential, and punitive damages in favor of Plaintiffs and all other Class Members against Defendants for all damages sustained as a result of Defendants' wrongdoing in an amount to be proven at trial;

c. Awarding Plaintiff and Class Members their costs and disbursements of this suit, including reasonable attorneys' fees, accountants' fees and experts' fees;

d. Awarding named Plaintiffs an incentive payment for serving as Class Plaintiffs; and

e. Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all claims so triable.

s/ Richard A. Harpootlian
Richard A. Harpootlian (Fed. I.D. # 1730)
Graham L. Newman (Fed. I.D. # 9746)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Post Office Box 1040
Columbia, South Carolina 29202
(803) 252-4848
(803) 252-4810 (facsimile)
rah@harpootlianlaw.com
gln@harpootlianlaw.com

William B. Harvey, III (Fed. I.D. # 1762)
HARVEY & BATTEY, P.A.
1001 Craven Street
Post Office Drawer 1107
Beaufort, South Carolina 29901-1107
(843) 524-3109
(843) 524-6973 (facsimile)
bharvey@harveyandbattey.com

ATTORNEYS FOR PLAINTIFFS AND
PLAINTIFF CLASS