IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Jonathon Rowles and George Holloway, individually and as class representatives of others similarly situated<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Chase Home Finance, LLC,<br><br>　　　　　Defendant. | Civil Action No.: 9:10-1756-MBS<br><br>**SECOND AMENDED COMPLAINT**[1]<br><br>**(Jury Trial Demanded)**<br><br>**(Class Action)** |

## INTRODUCTION

1.　Plaintiffs Jonathon Rowles and George Holloway bring this Class Action on behalf of themselves and all similarly situated persons in the United States Armed Forces and other servicemembers attached thereto who, while being entitled to the protections of the Servicemembers Civil Relief Act, 50 U.S.C.A. §§ 501 *et seq.* (hereinafter "SCRA,"), suffered violations of the SCRA in connection with the servicing of loans secured by real property at the hands of Defendant Chase Home Finance, LLC (hereinafter, "Chase").

2.　The United States enacted the Servicemembers Civil Relief Act in 1940 with the intent "to provide for, strengthen, and expedite the national defense through protection extended by this Act . . . to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation[.]" 50 App. U.S.C.A. § 502(1). The SCRA extends to members of the uniformed services while on active duty. 50 App. U.S.C.A. § 511.

3.　Specific protections provided by the SCRA include: a limitation on the maximum rate of interest chargeable to servicemembers' debts incurred prior to their active duty (50 App. U.S.C.A. § 527); a prohibition against use of the SCRA's protections to affect servicemembers'

---

[1] Plaintiffs file this second amended complaint with the written consent of the Defendant. (See **Exhibit A**)

future financial transactions (50 App. U.S.C.A. § 518); and limitations on the ability to foreclose upon a servicemember's home (50 App. U.S.C.A. § 533).

4. This class action complaint alleges that Chase violated all of these protections afforded to American servicemembers by the SCRA.

## PARTIES

5. Plaintiff Jonathon Rowles is a Captain in the United States Marine Corps and is a resident of the State of South Carolina. At all times relevant to this complaint, Plaintiff Jonathon Rowles was on active duty in the United States Marine Corps or was otherwise entitled to the protections of the Servicemembers Civil Relief Act.

6. Plaintiff George Holloway is a Sergeant First Class in the South Carolina Army National Guard and is a resident of the State of South Carolina. At all times relevant to this complaint, Plaintiff George Holloway was on active duty in the United States Army or was otherwise entitled to the protections of the Servicemembers Civil Relief Act.

7. Chase is a limited liability company organized and existing under the laws of the State of Delaware and has its principal place of business at 194 Wood Avenue South, Iselin, New Jersey.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under the Servicemembers Civil Relief Act, 50 U.S.C.A. §§ 501 *et. seq*.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the claims arise under the laws of the United States.

10. Chase conducts business in South Carolina, has entered into contracts to be performed in whole or in part in South Carolina and is subject to personal jurisdiction in South Carolina under the State's Long-Arm Statute, S.C. Code § 36-2-803.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) as many of the acts and transactions forming the basis of the claims in this action occurred in substantial part in this District and Chase is a corporate entity which is subject to personal jurisdiction in this

District.  Venue is proper in this Division pursuant to Local Rule 3.01(A)(1) in as much as the Defendant does business relating to the events or omissions alleged in this complaint within this division.

## FACTS

### United States Marine Corps Captain Jonathan Rowles

12.     Pursuant to a written agreement dated February 27, 2004, Rowles took out a purchase money mortgage (hereinafter "Loan") in the amount of $255,000.00 with BNC Mortgage, Inc., for the purchase of a home located at 5604 Spruce Ave. in Castle Rock, Colorado.  The Loan was an adjustable-rate mortgage and was structured as "interest only" for the first five years, with interest during that time to be calculated by multiplying the outstanding balance by the interest rate and dividing by 12.  BNC Mortgage assigned the Loan to Option One Mortgage Corporation in a transaction that became effective on April 1, 2004.  Option One then assigned the Loan to Chase Manhattan Mortgage Corporation effective May 1, 2004.  On information and belief, Chase is the successor in interest to Chase Manhattan Mortgage Corporation.

13.     Rowles executed a United States Marine Corps reserve contract on August 16, 2005 and received Assignment to Active Duty Orders which became effective on January 22, 2006.

14.     On April 14, 2006, Rowles requested in writing that Chase reduce the interest rate on the loan to 6% pursuant to the SCRA.  In this letter, Rowles specified January 22, 2006 as the date he entered active duty and produced two sets of orders to verify his current status.  Again on May 2, 2006, Rowles wrote to Chase to request the 6% rate protection under the SCRA.  This letter also specified Rowles' active duty date and included additional copies of his orders and a copy of his previous letter.

15.     In a letter dated May 8, 2006, Chase requested that Rowles provide "orders and/or an enlistment agreement showing the date of original call to duty."  On June 6 and July 24, 2006,

Rowles sent faxes to Chase customer service representatives that included handwritten cover sheets explaining the situation as well as copies of his letters of April 14 and May 2.

16.     In a letter dated July 27, 2006, Chase informed Rowles that because he had qualified for the protection of the SCRA, the company had adjusted the interest rate on the loan to 6% effective with his May 1, 2006 payment.  However, Chase failed to apply the statutory interest rate to the loan until August 17, 2006, which was the date of the first statement received by Rowles which reflected the 6% rate.  The July 27 letter also informed Rowles that his "loan is protected against late fees, adverse credit reporting, and default activities.  These protections will remain in effect for 90 days following your return from active duty."

17.     Chase sent Rowles a letter on December 1, 2007 which it characterized as a "required quarterly verification."  The letter included a form which Rowles was instructed to complete and sign in order to continue to receive the protection of the SCRA.  Rowles duly completed the form and returned the letter to Chase.  Chase sent additional verification letters on December 17, 2008, March 25, June 22 and December 29 of 2009 and March 22, 2010, all in violation of SCRA.

18.     In addition to the periodic verification letters, no fewer than four times per year since July of 2006, Rowles has had to call various Chase customer service representatives after being verbally informed or receiving documentation indicating that the interest rate on the loan was going to be adjusted above 6% if he failed to do so.  In March of 2008, Rowles was forced to request that his commanding officer at Training Squadron Eighty-Six in Pensacola, Florida, write to Chase on his behalf in order to confirm that he was in fact an active duty Marine.

19.     In a letter dated January 16, 2007, Chase again informed Rowles that he had qualified for the protection of the SCRA and that the company had accordingly extended the adjustment on the 6% interest rate effective February 1, 2007.  On April 2, 2008, Chase informed Rowles in writing that the company was "in receipt" of his "request for relief" under the SCRA and that he should allow three to four weeks for review of the request.  A subsequent letter dated

April 25, 2008, again informed him that his rate adjustment would be extended effective October 1, 2008.

20.     From the time that Chase applied the 6% interest rate to the loan until April 2009, Chase would send documentation to Rowles indicating the interest rate to be at various levels substantially above 6%.  On information and belief, during this time Chase would use various formulas and accounting methods to reconcile the higher stated interest rates while effectively only charging Rowles at 6%.

21.     Beginning in April 2009, the loan was to shift from interest only to an amortized loan over remaining 25 years per the terms of the original agreement.  On Rowles' April 2009 statement and each subsequent statement, Chase not only failed to accurately characterize the interest rate on the loan as 6% but also ceased to employ any formula or accounting method to effectively provide Rowles with the benefit of the 6% protection under the SCRA.

22.     Each month between April 2009 and the time of this filing, Rowles made a payment to Chase in the original contractual amount, which is the last correct amount billed by Chase reflecting interest at 6%.  Despite this fact, Chase repeatedly failed to credit Rowles for payments made and began to pursue aggressive collection methods for what it characterized as a past-due balance on Rowles' account.

23.     Chase's collection methods during this time included repeated phone calls and correspondence to Rowles from Chase debt collection departments in various locations.  These calls often came at a rate of three per day and included calls to his mother who lives at a different address and his workplace as well as calls made to his residence after midnight, and as late as 4:00 a.m.  In telephone conversations, voicemails and correspondence during this time, Chase representatives repeatedly threatened to report Rowles to the credit bureaus and to initiate foreclosure proceedings on the house in Colorado.

24.     This pattern of conduct by Chase caused Rowles to spend considerable time communicating with Chase via telephone, email and written correspondence.  This time included leave from his unit which was spent traveling from South Carolina to Colorado to meet with

5

Chase representatives in an effort to preserve his 6% interest rate under the SCRA and to prevent Chase from taking threatened actions which are unlawful under the SCRA. In June of 2010, Chase denied Rowles electronic access to his account with Chase.

### George Holloway

25. George Holloway is reservist with the United States Army who is currently serving on active duty overseas.

26. On March 30, 2000, Holloway purchased a house located at 48 Tillbrook Court, Fountain Inn, South Carolina 29644. At the time of the purchase, Plaintiff Holloway was not on active duty.

27. The purchase price of the home was $53,800. The purchase was financed by NVR Mortgage Finance, but the loan was thereafter transferred to Chase for servicing.

28. In 2008, Chase initiated foreclosure proceedings against Holloway's home which resulted in a foreclosure sale on May 4, 2009. Holloway was serving on active duty at the time of the sale.

### CLASS ALLEGATIONS

29. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b)(3) on behalf of all those persons who are eligible for SCRA protection and have suffered violations pursuant to the SCRA after financing their homes through Chase.

30. Excluded from the Class are Chase, its subsidiaries and affiliates, its officers, directors and employees, members of their immediate family and their legal representatives, heirs, successors or assigns and any entity in which any of the foregoing has a controlling interest.

31. The members of the Class are so numerous and dispersed that joinder of all members is impracticable.

32. Record owners and other members of the Class may be identified from the records maintained by Chase.

33. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among questions of law and fact common to the Class are:

   a. Whether Chase properly adjusted Class members' interest rates to 6% effective the dates of their first day of active duty as required by § 507(b)(2) of the SCRA.

   b. Whether Chase unlawfully required Class members to repeatedly verify their active duty status in order to continue to benefit from the protections of the SCRA.

   c. Whether Chase unlawfully required Class members to repeatedly re-apply to the lender in order to continue to benefit from the protections of the SCRA.

   d. Whether Chase, in its accounting and reporting of the reduction of Class members' interest rates to 6%, employed methods which are unlawful under the SCRA.

   e. Whether Chase's collection methods employed against Class members constitute a violation of § 518(3) of the SCRA.

   f. Whether Chase unlawfully attached detrimental information to the credit reports of SCRA-eligible servicemembers.

   g. Whether Chase engaged in foreclosure activity in violation of § 533 of the SCRA.

   h. Whether the Class members have sustained damages and, if so, what the appropriate measure of those damages should be.

34. Plaintiffs' claims are typical of the claims of the members of the Class in that he and members of the Class sustained damages arising out of Chase's repeated violations of the SCRA.

35. Plaintiffs will fairly and adequately protect the interests of the members of the Class as Plaintiffs' claims are not antagonistic to the claims of the Class and that there are no conflicts between Plaintiffs' claims and the claims of the Class members.

36. Plaintiffs have retained attorneys competent and experienced in class action litigation who have collectively obtained judgments or settlements valued at over $50 million in class litigation during the past five years and have extensive trial and appellate experience in federal court.

37. The Class consists of eligible servicemembers who are or have been on active duty in any branch of the armed forces of the United States as well as the commissioned corps of the National Oceanic and Atmospheric Administration and the commissioned corps of the Public Health Service. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable, adjudication of the controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein and there will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION
### (Violation of 50 U.S.C. App. 527(b)(2)—Failure to properly implement the protection of the SCRA)

38. Plaintiffs re-allege each and every allegation set forth above as if repeated verbatim herein.

39. Plaintiff Rowles was called to active duty in the United States Marine Corps on January 22, 2006. Plaintiff Rowles promptly notified Chase of his calling to active duty pursuant to the requirements set forth within Section 527(b)(1) of the SCRA.

40. Section 527(b)(2) of the SCRA requires creditors to apply the 6% interest rate limitation to an eligible servicemember's debt "effective as of the date on which the servicemember is called to military service."

41. Despite receiving prompt notification of Plaintiff Rowles' calling to active duty, Chase failed to apply the statutorily-mandated 6% rate until Rowles' August 2006 payment. Upon information and belief, Chase has invoked the same unlawful procedure for all members of Plaintiff Class. Chase's violation of the SCRA has caused the Plaintiff and the Plaintiff Class actual damages, including consequential damages.

42. Chase is therefore liable to Plaintiff and Plaintiff Class for damages including actual and punitive damages, prejudgment interest, costs and attorneys fees.

## SECOND CAUSE OF ACTION
### (Violation of 50 U.S.C. App. 527—Failure to maintain the 6% rate during the servicemember's active duty status)

43. Between December 2007 and March 2010, Chase required Rowles to re-verify his active duty status in writing on six separate occasions despite having written notice of the duration of his active duty term. And no fewer than four times per year between August of 2006 and the date of this filing, Chase essentially required Rowles to re-apply for SCRA protections by forcing him to call various company customer service representatives after being verbally informed or receiving documentation that the interest rate on the loan was going to be adjusted above 6%.

44. Section 527(b)(2) of the SCRA requires creditors to apply the interest rate limitation to an eligible servicemember's debt "effective as of the date on which the servicemember is called to military service." This action is to be taken "[U]pon receipt of written notice and a copy of orders calling a servicemember to military service."

45. Section 527(a)(1) requires the creditor to maintain the 6% interest rate limitation "during the period of military service." Chase's violation of this statutory mandate has caused Plaintiff Rowles and Plaintiff class actual damages, including consequential damages.

46. Chase is therefore liable to Plaintiff Rowles and Plaintiff Class for damages including actual and punitive damages, prejudgment interest, costs and attorneys fees.

9

## THIRD CAUSE OF ACTION
### (Violation of 50 U.S.C. App. 518—Employment of collection methods unlawful under the SCRA)

47.     After unlawfully adjusting the interest rate on the loan above 6% and determining that Rowles had a past-due balance, Chase began to employ collection methods which included repeated phone calls and correspondence from Chase debt collection departments in various locations. These calls often came at a rate of three per day and included calls to his workplace and his mother – who lives at a different address – as well as calls made to his residence after midnight. In telephone conversations, voicemails and correspondence during this time, Chase representatives repeatedly threatened to report Rowles to the credit bureaus and to initiate foreclosure proceedings on the house in Castle Rock, CO.

48.     This pattern of conduct by Chase caused Rowles to spend considerable time communicating with Chase via telephone, email and written correspondence and to take leave from his unit to travel from South Carolina to Colorado in order to preserve protections to which he was already entitled and to prevent the carrying out by Chase of threatened actions which are unlawful under the SCRA.

49.     Section 518(1) of the SCRA makes it unlawful for a creditor to determine that a servicemember's invocation of protection under the act renders him "unable to pay the civil obligation or liability in accordance with its terms."

50.     Section 518(3) of the SCRA makes it unlawful for a servicemember's invocation of protection under the act to serve as the basis for a creditor to provide "an adverse report relating to creditworthiness of the servicemember by or to a person engaged in the practice of assembling or evaluating consumer credit information."

51.     Chase's willful breach of these provisions of the SCRA has caused the Plaintiff and the Plaintiff Class actual damages, including consequential damages.

52.     Chase is therefore liable to Plaintiff Rowles and Plaintiff Class for damages including actual damages, prejudgment interest, costs and attorneys fees.

## FOURTH CAUSE OF ACTION
### (Violation of 50 U.S.C. App. § 533—Unlawful Foreclosure of Servicemembers' Homes)

53.     Plaintiffs reallege each and every allegation set forth above as if repeated verbatim herein.

54.     50 U.S.C.A. § 533 provides that

> A sale, foreclosure, or seizure of property for a breach of an obligation described in subsection (a) shall not be valid if made during, or within 9 months after, the period of the servicemember's military service except—
>
> (1) upon a court order granted before such sale, foreclosure, or seizure with a return made and approved by the court; or
>
> (2) if made pursuant to an agreement as provided in section 107 [section 517 of this Appendix].

55.     At all times relevant to this complaint, Chase possessed actual or constructive knowledge of Plaintiff Holloway and the Plaintiff Class's entitlement to SCRA protection.

56.     Despite this knowledge, Chase foreclosed upon the homes of certain class members, including Plaintiff Holloway, without obtaining either a court order or a waiver, while he and those class members were entitled to the protections of 50 App. U.S.C.A. § 533.

57.     As a direct and proximate result of Chase's actions, Plaintiff Holloway and those class members have been materially damaged and are entitled to an award of actual damages, punitive damages, costs and attorneys fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Plaintiff Classes, pray for relief and judgment as follows:

a.     Determining that this action is a proper class action, and certifying Plaintiffs as Lead Plaintiffs and as Class Representatives and Plaintiff's counsel as Class Counsel under Rule 23 of the Federal Rules of Civil Procedure;

b.  Awarding compensatory, consequential, and punitive damages in favor of Plaintiffs and all other Class Members against Defendant for all damages sustained as a result of Defendant's wrongdoing in an amount to be proven at trial;

c.  Awarding Plaintiffs and Class Members their costs and disbursements of this suit, including reasonable attorneys' fees, accountants' fees and experts' fees;

d.  Awarding Plaintiffs an incentive payment for serving as Class Plaintiffs; and

e.  Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all claims so triable.

s/ Richard A. Harpootlian
Richard A. Harpootlian (Fed. I.D. # 1730)
Graham L. Newman (Fed. I.D. # 9746)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Post Office Box 1040
Columbia, South Carolina 29202
(803) 252-4848
(803) 252-4810 (facsimile)
rah@harpootlianlaw.com
gln@harpootlianlaw.com

William B. Harvey, III (Fed. I.D. # 1762)
HARVEY & BATTEY, P.A.
1001 Craven Street
Post Office Drawer 1107
Beaufort, South Carolina 29901-1107
(843) 524-3109
(843) 524-6973 (facsimile)
bharvey@harveyandbattey.com

ATTORNEYS FOR PLAINTIFFS AND
PLAINTIFF CLASS