# EXHIBIT 1

## (Amended Settlement Agreement and Exhibits)

## AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement is entered into between plaintiffs Jonathon Rowles and George Holloway ("Class Representatives" or "plaintiffs"), on behalf of themselves and the Class Members (as defined below), and defendant Chase Home Finance, LLC ("Chase" or "defendant").

## RECITALS

WHEREAS, Jonathon Rowles filed the action entitled *Rowles v. Chase Home Finance, LLC*, No. CV 9:10-1756, in the United States District Court for the District of South Carolina and, along with George Holloway, filed a Second Amended Complaint in that action (the "Action");

WHEREAS, the Action asserts that Chase violated the Servicemembers Civil Relief Act, 50 U.S.C. App. § 501, *et seq.* ("SCRA"), in its application of the various protections afforded to servicemembers by the SCRA in connection with the servicing of loans secured by real property;

WHEREAS, the Parties (as defined below) have conducted an extensive investigation into the facts and law and engaged in extensive, good-faith, and arm's-length settlement negotiations relating to the Action, including a two-day mediation session with the Honorable Edward N. Cahn (ret.) in Charleston, South Carolina, on March 18 and 19, 2011;

WHEREAS, the Parties understand that, if litigated further, the Action would require the resolution of numerous issues of law, fact, and procedure;

WHEREAS, the Parties desire to settle the Action finally on the terms and conditions set forth herein and to avoid the burden, expense, and uncertainty of continued litigation; and

WHEREAS, the Parties executed a settlement agreement on April 19, 2011 ("Original Settlement Agreement"), appeared before the Honorable Margaret B. Seymour for a preliminary approval hearing regarding this class action settlement on May 6, 2011, and, pursuant to Section 16.4 of the Original Settlement Agreement, hereby amend the Settlement Agreement as discussed with the Court ("Amended Settlement Agreement" or "Settlement Agreement");

NOW THEREFORE, in consideration of the covenants and agreements set forth herein, Chase and Class Representatives, on behalf of themselves and the purported class and through their undersigned counsel, agree to the settlement of the Action, subject to Court approval, under the following terms and conditions:

## 1.    Definitions

As used in this Settlement Agreement, the terms set forth in this section in boldface type will have the following meanings:

1.1    **Actual Refunds.** The amount that Chase actually sent or will send to Class Members by the Class List Close Date in connection with its investigation of potential SCRA compliance breaches. These amounts are separate and distinct from the payments made to Class

Members if the Court finally approves this Settlement. Chase shall certify under oath to the Court the amounts of the Actual Refunds to Class Members fifteen (15) days prior to the final approval hearing.

       1.2    **Agreement or Settlement.** This document, including the text and any exhibits of this Amended Settlement Agreement, which has been signed by the Class Representatives, Class Counsel, Chase, and its counsel.

       1.3    **Class Counsel.** Subject to Court approval, Richard A. Harpootlian, P.A. and Harvey & Battey, P.A.

       1.4    **Class List Close Date.** Subject to Court approval, sixty-five (65) days prior to the date of the final approval hearing in connection with this Settlement.

       1.5    **Class Members.** All persons who fall within the settlement class to be certified pursuant to Section 3.1 hereof.

       1.6    **Class Representatives.** Jonathon Rowles and George Holloway.

       1.7    **Court.** The Honorable Margaret B. Seymour, District Court for the District of South Carolina, Beaufort Division, or such other judge of the District of South Carolina to whom the Action may hereafter be assigned.

       1.8    **Designated Programs.** The programs agreed upon by the Parties, and approved by the Court at the final approval hearing, which may receive payments in accordance with Section 5.2 of the Agreement. In the event the Parties are unable to reach agreement, the Designated Programs shall be chosen by the Court.

       1.9    **Effective Date.** The last date by which all of the following have occurred:

    (a)    The Court enters a judgment finally approving the Settlement of the Action in a manner consistent with the terms and intent of this Settlement Agreement.

    (b)    Either: (i) Thirty-five (35) days have passed after completed service on the Parties to the Action and all objectors to the Settlement of the Action, if any, of notice of entry of the Court's judgment finally approving the Settlement of the Action, and within such time no appeal is taken nor any extension for such appeal is granted, or (ii) if an appeal is taken with respect to the Court's judgment finally approving the Settlement of the Action, the appellate court has by final order affirmed the Court's judgment finally approving the Settlement of the Action, or has denied review, or the appellant otherwise has exhausted all appellate remedies.

       1.10    **Final Judgment or Final Approval.** The Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court consistent with this Agreement, in the form attached as Exhibit D hereto.

1.11    **Fund I.** Subject to Court approval of the Settlement, $12,000,000.00 payable by Chase to Class Members in the manner provided in Section 5.1. If, however, the total number of loans participating in the Settlement exceeds 8,000, then Chase shall increase Fund I by $1,500 for each loan in excess of 8,000 that participates in this Settlement. A loan will participate in the Settlement if the Class Members who are borrowers on the loan do not opt out of the Settlement.

1.12    **Fund II.** Subject to Court approval of the Settlement, the $15,000,000.00 and potential additional amounts payable by Chase to Class Members or Designated Programs, in the manner provided in Section 5.2 of the Agreement.

1.13    **Original Estimated Refunds.** The amounts that Chase calculated as the refunds due to individual Class Members in connection with its investigation of potential SCRA compliance breaches. For the existing loans that have received a refund, this information was contained in column F of the spreadsheet previously certified by Chase and provided to Class Counsel. Chase shall certify under oath to the Court the amounts of the Original Estimated Refunds to all Class Members fifteen (15) days prior to the final approval hearing.

1.14    **Parties.** Jonathon Rowles and George Holloway, on behalf of themselves and the Class Members, and Chase.

1.15    **Preliminary Approval Order.** The Preliminary Approval Order in the form attached as Exhibit A hereto.

1.16    **Released Parties.** Chase and its parents, subsidiaries, affiliates, vendors, agents, successors, assignors, assignees, and/or assigns and their respective subsidiaries, affiliates, vendors, agents, successors, assignors, assignees, and/or assigns, and each of their respective present, former, or future officers, directors, shareholders, employees, representatives, consultants, accountants, and attorneys.

1.17    **Settlement Administrator.** Subject to Court approval, the Garden City Group.

1.18    **Special Claims.** The claims by Class Members for additional compensation paid out of Fund II in accordance with the provisions of Section 5.2 of the Agreement.

1.19    **Special Master.** Subject to Court approval, the Honorable Edward N. Cahn (ret.) ("Judge Cahn"), or, if Judge Cahn is unable or unwilling to serve in that capacity, or the Court refuses to approve his appointment, such other individual as the Parties agree upon in writing and as the Court thereafter approves.

## 2.    Settlement Procedures

On April 21, 2011, plaintiffs moved the Court for preliminary approval of this settlement ("Motion for Preliminary Approval"), in which they sought an order substantially in the form of Exhibit A thereto: (a) preliminarily approving the Settlement Agreement as within the range of possible final approval as fair, adequate, and reasonable; (b) preliminarily certifying the Settlement Class as defined in Section 3.1 and appointing Class Counsel, for settlement purposes

only; (c) setting a final approval hearing date; and (d) approving the manner and form of class notice described in Section 3.3. Chase filed a joinder to that motion on May 4, 2011. As soon as possible after the execution of this Amended Settlement Agreement, the Parties shall supplement their Motion for Preliminary Approval by submitting this Amended Settlement Agreement and exhibits hereto.

If the Court certifies any classes or enters any orders relating to Class Representatives and Class Counsel, such actions shall not be an adjudication of any fact or issue for any purpose other than the effectuation of this Agreement, nor shall they be considered as law of the case or res judicata or have collateral estoppel effect in this or any other proceeding. In the event that Final Judgment is not achieved, the Court's orders contemplated by this section shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity.

### 3.    The Settlement Class and Class Notice

3.1    **Settlement Class**. For settlement purposes only, the Parties agree that the Court may certify a Settlement Class defined as follows:

> All borrowers with mortgage loans, or secured home equity loans or home equity lines of credit, which were active and serviced by EMC, Washington Mutual, and/or Chase as of January 1, 2005, and to whom Chase has sent or will send an Actual Refund by the Class List Close Date.

It is understood and agreed that the Class Members shall include all individuals who are the subject of the foreclosure remediation identified in Section 7.2.

3.2    **Decertification of the Settlement Class if Settlement Not Approved**. If the Court does not grant final approval of the Settlement, certification of the Settlement Class will be vacated, and the Parties will be returned to their positions *quo ante* with respect to the Action as if the Settlement had not been entered into. In the event that Final Judgment is not achieved, (a) any Court orders preliminarily or finally approving the certification of any class contemplated by the Settlement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity, and (b) the fact of this Settlement, that Chase sought the certification of any class under the Settlement, or that the Court preliminarily approved the certification of a settlement class, shall not be used or cited thereafter by any person or entity, including in any contested proceeding relating to the certification of any class.

3.3    **Manner of Giving Notice**. Subject to Court approval, the Settlement Administrator will provide notice substantially in the form of Exhibit B (the "Class Notice") to all Class Members after preliminary approval of the Settlement by the Court and in the manner prescribed herein. Such notice shall be at the expense of Chase, and that expense will be borne separately from the monies made available in Funds I and II. No further notice shall be required after the Court enters a judgment finally approving the Settlement of the Action.

Within fourteen (14) days after entry of the Preliminary Approval Order, Chase shall compile a list of then-existing Class Members with corresponding Original Estimated Refunds pertaining to each Class Member and shall provide that list to the Settlement Administrator and Class Counsel. By the Class List Close Date, Chase shall provide a final update of the class list,

with any additions, to the Settlement Administrator and Class Counsel. A Chase official with the necessary authority shall verify, under oath, that this list and information therein is accurate.

In preparing the class list and any updates thereto, Chase shall update the mailing address of the Class Members in the manner described in the Declaration of Joe Carson in Support of Chase Home Finance, LLC's Joinder to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, which was filed with the Court on May 4, 2011. This process includes, for Class Members whose underlying loan is no longer active, running a skip trace for their postal address through Lexis Nexis. If Lexis Nexis is unable to locate an address through their trace process, Chase shall provide the Settlement Administrator with the address last known as current on Chase's central repository, known as Info One. After receiving the class list from Chase, the Settlement Administrator shall then update the class list and any updates thereto through the National Change of Address database ("NCOA") before mailing the Class Notice and the claim form ("Special Claim Form") to any Class Member.

The Settlement Administrator shall arrange within thirty (30) days after the Preliminary Approval Order to mail the approved Class Notice and the Special Claim Form (together, the "Mailer") to the then-existing class list. The Mailer shall be sent by first-class mail, unless the Parties and the Court agree that some other bulk processing of the Mailer, such as a six-panel roll-fold mailer of up to one ounce in postage weight, is preferable. Only one Mailer shall be mailed to each Class Member, and only one Mailer shall be mailed to all Class Members shown to reside at the same unique address. Any Class Member added by Chase between the preparation of the original class list and the Class List Close Date shall be sent the Mailer no later than five (5) days after the Class List Close Date.

3.4    **Undeliverable Mail.** If any Mailers or checks are returned as undeliverable, the Settlement Administrator shall run the Class Member(s) through a Lexis Nexis skip trace in an effort to find a current address. If a current address is not found through Lexis Nexis, Chase shall provide the Settlement Administrator with the address last known as current on Chase's central repository, known as Info One. The Settlement Administrator shall then resend the Mailer or check a second time. For any Mailers or checks that are returned as undeliverable to the Settlement Administrator a second time, the Settlement Administrator shall provide the relevant name and address information used for those Class Members to Chase, who will check its database of returned mail created for the purpose of tracking any returned refund checks, to see if it has obtained a more current address. Chase will provide any updated address to the Settlement Administrator, who will send the Mailer or check a third time. If a current address is not found, the Parties will work cooperatively to find a more current address, including by attempting to contact the Class Member. If such efforts prove unsuccessful, for any affected Class Members with a home loan actively serviced by Chase, Chase shall apply all settlement funds due, as a credit to those loans. The Settlement Administrator shall be prepared to provide reports as requested by the Court regarding the handling of undeliverable mail.

3.5    **Settlement Website.** The Settlement Administrator shall maintain a dedicated settlement website at www.ChaseSCRASettlement.com, which shall within 30 days of the entry of an order preliminarily approving the Settlement (a) prominently display the Class Notice, Opt-Out form, and Special Claim Form, (b) provide an online and toll-free, interactive voice response number whereby Class Members may request additional information or documents, in

which event appropriate information shall be promptly provided by the Settlement Administrator, and (c) make available for download the operative complaint, the Settlement Agreement and Amended Settlement Agreement, the Preliminary Approval Order, and any other orders and documents from the Court relating to the Settlement. The toll-free number shall also allow Class Members to update their mailing address, and shall provide answers to frequently asked questions, the text of which shall conform to the Class Notice approved by the Court.

3.6    **Right to Void Settlement**. If more than three percent (3%) of the people eligible for Settlement Class membership elect to opt out of the class, or if the amount of Original Estimated Refunds on the loans for which people opt out of the class exceeds $3,000,000.00 in the aggregate, Chase may elect to void this Settlement Agreement by providing written notice to Class Counsel of such election not later than five (5) days before the fairness hearing, in which case this Settlement Agreement shall be of no force and effect and the Settlement Class shall be decertified pursuant to Section 3.2.

## 4.    <u>Release of Claims</u>

4.1    **Class Claims**. Upon Final Approval, Class Representatives, each Class Member who has not opted out of the Settlement in accordance with the terms of this Agreement, and each of their respective executors, representatives, heirs, successors, bankruptcy trustees, guardians, and all those who claim through them or who assert claims on their behalf, will be deemed to have completely released and forever discharged the Released Parties, and each of them, from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability of any and every kind, based on the alleged violation of the SCRA, 50 U.S.C. App. § 501, *et seq.*, in connection with the servicing of loans secured by real property, or any other comparable federal, state, or local law, statute, regulation, or common law, and all claims for monetary, equitable, declaratory, injunctive, or any other form of relief arising thereunder, whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which Class Representatives or any Class Member ever had or now has, resulting from, arising out of, or in any way, directly or indirectly, connected with the claims raised in the Action, or claims which could have been raised in the Action based on the same transactional nucleus of facts.

4.2    **Unknown Claims**. Class Representatives and Class Members each waive and release any and all provisions, rights, and benefits conferred either (a) by section 1542 of the California Civil Code, or (b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, with respect to the claims released pursuant to Section 4.1. Section 1542 of the California Civil Code reads:

> Section 1542. <u>General Release, extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Class Representatives and Class Members may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the claims released pursuant to the terms of Section 4.1, but each of those individuals expressly agrees that,

upon entry of the Final Judgment, he shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the claims released pursuant to Section 4.1, whether or not concealed or hidden, without regard to subsequent discovery or existence of such different or additional facts.

     **4.3**    **Bar to Future Suits.** Class Representatives, and Class Members who do not opt out in accordance with the Settlement, shall be enjoined from prosecuting any legal proceeding against any Released Party with respect to the claims released pursuant to Sections 4.1 and 4.2. The Court shall retain jurisdiction to enforce the judgment, releases, and bar to suits contemplated by the Settlement. The Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## 5.    <u>Classwide Settlement Relief</u>

     **5.1**    **Fund I.** Subject to Court approval of the Settlement, within twenty-one (21) days after the Effective Date, the Settlement Administrator will distribute all monies in Fund I to Class Members who do not properly opt out of the Settlement. For each loan participating in the Settlement, the Class Members will be paid from Fund I either $100.00 or an estimated 6.2 times the Original Estimated Refund, whichever is greater. For example:

| If the Original Estimated Refund was: | Estimated Fund I Payment would be: |
|---|---|
| $10 or less | $100 |
| $100 | $620 |
| $500 | $3,100 |
| $1,000 | $6,200 |
| $5,000 | $31,000 |

The actual amounts distributed from Fund I for each loan participating in the Settlement shall be subject to a *pro rata* adjustment by the Settlement Administrator so that the total amount of Fund I, as determined in accordance with Section 1.11, shall be exhausted but not exceeded. Any adjustment, however, must reflect the following: the greater of (1) a flat payment of $100.00; or (2) a multiplier payment that will exhaust but not exceed the remaining amount in Fund I.

One payment will be made per participating loan. A loan will participate in the Settlement if the Class Members who are borrowers on the loan do not opt out of the Settlement. The Fund I payments shall be made by check payable jointly to all co-borrowers on the participating loan and the check shall be negotiable for one hundred eighty (180) days. The Settlement Administrator shall update the Class Member list through the NCOA before sending those payments.

     **5.2**    **Fund II.** Fund II shall be distributed in the manner prescribed below. Class Members who do not properly opt out of the Settlement are eligible to submit a Special Claim Form for additional consequential damages incurred by such Class Members, including, but not limited to, compensation for emotional distress, pain and suffering, economic loss, and/or credit defamation. The Special Claim Form shall be subject to Court approval, and shall be in a form

substantially similar to Exhibit C. The Special Claim Form and any accompanying information shall be submitted to the Settlement Administrator within ninety (90) days after the final approval hearing, or by such other date as the Court may set. After the deadline to submit the Special Claim Form has passed, the Settlement Administrator shall provide all the timely Special Claim Forms and accompanying material to the Special Master.

The Special Master shall have the discretion to decide the amount of additional compensation, if any, due any eligible Class Member who timely submits a Special Claim Form. The Special Master's decision shall be final as to entitlement and amount of any such additional compensation. In making that decision, the Special Master shall be guided by his or her experience in deciding similar claims for consequential damages, the facts submitted in the Special Claim Form, and any accompanying material provided in support thereof.

Plaintiff Jonathon Rowles shall be entitled to submit a Special Claim Form to the Special Master for consequential damages seeking debt forgiveness on his Chase home mortgage of $247,000. Chase has agreed not to dispute this claim, though the claim remains subject to the Fund II Special Master discretionary analysis set forth within this section. Plaintiff Jonathon Rowles has agreed that, should the Special Master award him consequential damages from Fund II, up to $247,000 of such an award may be remitted to him via forgiveness of the outstanding indebtedness on his mortgage loan serviced by Chase. All other awards paid to Class Members from Fund II shall be in the form of a single cash payment.

5.2.1    If the total amount of awards granted by the Special Master in connection with Special Claims exceeds $15,000,000.00, the Special Master shall prorate the reduction of the awards so that the aggregate does not exceed $15,000,000.00.

5.2.2    If full payment of any Fund II awards by the Special Master relating to additional consequential damages arising out of any wrongful foreclosure under the SCRA would not be made by operation of the $15,000,000.00 cap and section 5.2.1, Chase shall make up to an additional $500,000.00 available to pay the difference between the original Fund II awards relating to wrongful foreclosures and the amount by which those awards were reduced by such prorating. In no event shall the amount Chase is obligated to pay out of Fund II exceed $15,500,000.00.

5.2.3    If the total amount of awards granted by the Special Master in connection with Special Claims is less than $15,000,000.00, all awards shall be prorated so that the aggregate total of the Special Claims awards will equal—but not exceed—$15,000,000. However, the Special Master shall not prorate the awards more than twice their original amount. If, after such prorating has occurred, the total amount of awards granted by the Special Master in connection with the Special Claims still is less than $15,000,000.00, the remainder shall be distributed to the Designated Programs approved by the Court. The Special Master shall determine the distribution of any such monies to the Designated Programs, and, in doing so, shall take into account the amount remaining in Fund II, the size of the Designated Programs, and such other information about the scope and size of the respective organizations as to effect a proportional distribution of the available funds to the Designated Programs.

After the expiration of the period in which Class Members shall be entitled to submit claims to the Special Master for compensation from Fund II, the Special Master shall analyze all claims under the framework outlined above. Within three (3) months from the expiration of the Fund II Special Claim submission deadline, the Special Master shall submit to the Court a verified report of Fund II claimants and damages awarded to each (the "Fund II Report"). Should the Special Master need additional time to decide properly submitted claims and to prepare the Fund II Report, the Special Master shall petition the Court for such reasonable deadline necessary to complete those duties.

Prior to the expiration of the Fund II Report deadline, the Special Master may consider Special Claim Forms submitted late, providing the Class Member demonstrates good cause why he or she was unable to submit a Special Claim by the submission deadline. The Special Master shall use his discretion in determining whether any late claimant seeking compensation under this section has demonstrated "good cause" as to why his or her claim should be considered. The consideration and award of damages in connection with Special Claims submitted late will otherwise be governed by the other provisions of this section.

Chase will pay the awards granted by the Special Master in accordance with this section to the respective Class Members and, if applicable, make the payments from the remainder of Fund II to the Designated Programs, within twenty-one (21) days after submission to the Court of the Special Master's Fund II Report. Fund II payments shall be made by check made negotiable for one hundred eighty (180) days. The Settlement Administrator shall update the Class Member list through the NCOA before sending those payments. If possible, the Settlement Administrator may aggregate the payment due a Class Member from Fund II with the payment due that Class Member from Fund I.

### 6.    Credit Reporting

Chase will remove prior derogatory credit reporting it made during Class Members' SCRA protection periods in connection with loans included in the Settlement Class.

### 7.    Additional Class Benefits

The Parties recognize that, beyond the monetary compensation set forth within Sections 5.1 and 5.2 of this Agreement, the following additional programs benefit Class members and may be counted toward the value of this Settlement, including for purposes of plaintiffs' request of a Class Representative incentive award to Jonathon Rowles and George Holloway, and/or attorneys' fees to Class Counsel.

7.1    Actual Refunds:  Chase has already paid approximately $6,000,000.00 to identified Class Members in connection with its SCRA review.

7.2    Foreclosure Remediation:  Consistent with its publicly announced policy, Chase will provide, including through debt forgiveness, an estimated $6,400,000.00 and other remedies to Class Members who were the subject of wrongful foreclosures under the SCRA as follows:

(a) Chase will rescind the foreclosure sale where possible, and forgive the remaining mortgage debt;

- 9 -

(b) If the foreclosure sale was previously rescinded, Chase will refund any mortgage payments made since the sale was rescinded with interest, and forgive the remaining mortgage debt;

(c) If the home cannot be returned, Chase will pay the borrower the full value of the home at the time of sale (at the higher of the sale price to the third party or the appraised value at the time of that sale), waive any deficiency, and forgive any remaining mortgage debt; and

(d) In all cases above, Chase will remove all credit reporting relating to the foreclosure and refund any fees or other costs associated with the foreclosure.

All such Class Members will also be entitled to a full refund of any fees or interest paid in excess of 6% during their period of SCRA protection. This remediation is not subject to a monetary cap, and Chase shall certify under oath the number of loans and the amounts provided to Class Members under this remediation fifteen (15) days prior to the final approval hearing. In addition to the remediation above, Class Members who were the subject of a wrongful foreclosure and who do not opt out of the Settlement shall be entitled to an additional payment from Fund I in accordance with section 5.1, to submit a Special Claim for additional consequential damages from Fund II in accordance with section 5.2, and to have any claim that they did not receive the remediation due as outlined above submitted to the Special Master for resolution. If any such claims are submitted, the Special Master shall provide a report to Chase, Class Counsel and the Court of his or her decisions with respect to such claims by the Fund II Report deadline.

7.3    Rate Reduction: Chase has agreed to reduce the interest rate on loans for borrowers eligible for the benefits under Section 527 of the SCRA from 6% to 4%, with an estimated value to current SCRA-eligible Class Members of approximately $9,000,000.00 in the first year of that rate reduction.

Except as otherwise specifically provided in section 7.2, Class Representatives and Class Members shall have no rights to alter, modify, enforce, or otherwise interfere with these programs.

## 8.    Costs of Administration

Settlement administration costs, including costs of the Settlement Administrator and Special Master, and of sending the Mailer, are to be borne by Chase, separate and apart from the monies made available for payments from Fund I and Fund II.

## 9.    Attorneys' Fees and Litigation Expenses and Reimbursements

9.1    Attorneys' Fees and Expenses. Class Counsel agree to request approval of attorneys' fees and costs in an amount not to exceed $8,000,000.00. Chase will not oppose any such request, and will pay any fees and costs approved by the Court in an amount that does not exceed $8,000,000.00, and will do so within twenty-one (21) days after the Effective Date. Any

such monies awarded by the Court for attorneys' fees and expenses will be in excess of compensation paid to Class Members and shall not be deducted from Class Members' settlement benefits, nor shall they be construed in any way to reduce Class Members' settlement benefits.

9.2    **Incentive Award.** Jonathon Rowles will request Court approval of an incentive award consisting of a cash payment of $25,000.00. George Holloway will request Court approval of an incentive award consisting of a cash payment of $10,000.00. Chase will not oppose any such requests, and will, within twenty-one (21) days after the Effective Date, pay any such awards approved by the Court up to $25,000.00 for Jonathon Rowles and $10,000.00 for George Holloway. A decision by the Court to award less than plaintiffs may request as an award shall not be deemed a basis to void any other provision of the Settlement.

## 10.    <u>Board Involvement</u>

As permitted by governing rules or regulations, plaintiff Jonathon Rowles shall be allowed to serve as an advisor to Chase's Veteran's Advisory Council.

## 11.    <u>Dismissal of Litigation</u>

The Class Representatives, on behalf of themselves and the Class Members, consent to the dismissal of the Action with prejudice in accordance with the terms of the Agreement, and the Parties hereby stipulate to the entry of the Final Judgment.

## 12.    <u>Continuing Jurisdiction</u>

The Court shall have continuing jurisdiction, during the term of this Agreement, to enforce this Agreement's terms, and to enforce the Final Judgment.

## 13.    <u>Non-Disparagement</u>

Class Counsel and Class Representatives agree to refrain from disparaging Chase and its parent company, subsidiaries, affiliates, successors, or assigns with respect to any issue related to this Action. Chase agrees to refrain from disparaging Class Representatives publicly or in the media regarding any issue related to this Action. Failure to abide by this provision will constitute a breach of this Settlement Agreement.

## 14.    <u>Press Release</u>

The only press release relating to the Settlement shall be prepared jointly by the Parties.

## 15.    <u>Notices</u>

Any communication, verification, or notice sent by Class Counsel or a Party in connection with this Settlement Agreement shall be effected by facsimile and U.S. mail as follows:

- 11 -

To Plaintiffs:

Richard A. Harpootlian
Richard A. Harpootlian, P.A.
1410 Laurel Street
Columbia, South Carolina 29201
Facsimile: (803) 252-4810

William B. Harvey III
Harvey & Battey, P.A.
1001 Craven Street
Beaufort, South Carolina 29902
Facsimile: (843) 524-6973

To Chase:

Michael J. Agoglia
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105
Facsimile: (415) 268-7522

## 16.    Miscellaneous

16.1    **Entire Agreement**. This Agreement contains the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement.

16.2    **No Liability**. This Agreement does not constitute, is not intended to constitute, and will not under any circumstances be deemed to constitute, an admission by either Party as to the merits, validity, or accuracy, or lack thereof, of any of the allegations or claims in this Action. This Agreement does not constitute a waiver of any defenses or affirmative defenses that Chase or its successor may be entitled to assert in any future litigation, including the applicable statute of limitations.

16.3    **Invalidity on Modification or Disapproval**. In the event any court disapproves or sets aside this Settlement Agreement or any material part hereof for any reason, or holds that it will not enter or give effect to the Final Judgment without modification, or holds that the entry of the Final Judgment or any material part thereof should be overturned or modified in any material way, then:

> (A) If all Parties do not agree to jointly appeal such ruling, this Settlement Agreement will become null and void, and the Action will continue, and the Parties stipulate to a joint motion (i) that any and all orders entered pursuant to this Settlement Agreement be vacated, and (ii) that any and all dismissals pursuant to this Agreement be vacated; or

> (B) if the Parties do agree to jointly appeal such ruling and if the Final Judgment or its equivalent in all material respects is not in effect after the termination of all proceedings arising out of such appeal, this Agreement will become null and void, and the Action will continue, and the Parties stipulate to a joint motion (i) that any and all orders entered pursuant to this Agreement be vacated, including, without limitation, any order modifying the class certification order or permitting amendment of the complaint to conform the complaint to the class definition set out in

Section 3.1, and (ii) that any and all dismissals pursuant to this Agreement be vacated.

16.4    **Amendment.** This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives.

## 17.    Representations and Warranties

17.1    **No Additional Persons with Financial Interest.** Class Representatives and Class Counsel warrant and represent that they are not aware of any persons (natural or legal) having any interest in any award of attorneys' fees, costs, and litigation expenses in connection with the Action other than Class Counsel.

17.2    **Parties Authorized to Enter into Settlement Agreement.** Class Representatives and Chase represent and warrant that they are fully authorized to enter into this Agreement and to carry out the obligations provided for herein. Each Party hereto further represents and warrants that he, she, or it intends to be bound fully by the terms of this Agreement.

17.3    **No Attempt by Parties to Object.** Class Representatives and Class Counsel and defendant each represent and warrant that they have not attempted to, nor will they attempt to (a) void this Agreement in any way, or (b) solicit, encourage, or assist in any fashion in, any effort by any person (natural or legal) to object to the Settlement under this Agreement.

17.4    **Signatures.** Each person executing this Agreement on behalf of a Party covenants, warrants, and represents that he is and has been fully authorized to do so by such Party. In addition, signature by facsimile will constitute sufficient execution of this Settlement Agreement.

17.5    **Best Efforts.** The Parties agree that the terms of the Settlement Agreement reflect a good-faith settlement of disputed claims. Class Counsel, Class Representatives, and Chase consider the settlement effected by this Agreement to be fair and reasonable and will use their best efforts to seek approval of the Settlement Agreement by the Court, including amendment of the complaint, and in responding to any objectors, intervenors, or other persons or entities seeking to preclude the final approval of this Settlement Agreement.

17.6    **Time Periods.** The time periods and dates provided in this Agreement with respect to the giving of notices and hearings are subject to Court approval and modification by the Court or by written stipulation of Class Counsel and counsel for defendant.

17.7    **Governing Law.** This Agreement is intended to be and shall be governed by the laws of the State of South Carolina.

17.8    **No Construction Against Drafter.** This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

- 13 -

**17.9    Agreement Binding on Successors in Interest.** This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

**17.10    Execution in Counterparts.** This Agreement shall become effective upon its execution by the Parties, Class Counsel, and counsel for Chase. The Agreement may be executed in counterparts. Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

CLASS COUNSEL:

Dated:  May 13, 2011

Richard A. Harpootlian
RICHARD A. HARPOOTLIAN, P.A.

CLASS COUNSEL:

Dated:  May 12, 2011

William B. Harvey III
HARVEY & BATTEY, P.A.

COUNSEL FOR CHASE:

Dated:  May ____, 2011

Michael J. Agoglia
MORRISON & FOERSTER LLP

2978979

- 14 -

17.9    **Agreement Binding on Successors in Interest.** This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

17.10    **Execution in Counterparts.** This Agreement shall become effective upon its execution by the Parties, Class Counsel, and counsel for Chase. The Agreement may be executed in counterparts. Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

CLASS COUNSEL:

Dated: May ___, 2011

_____
Richard A. Harpootlian
RICHARD A. HARPOOTLIAN, P.A.

CLASS COUNSEL:

Dated: May ___, 2011

_____
William B. Harvey III
HARVEY & BATTEY, P.A.

COUNSEL FOR CHASE:

Dated: May 13 2011

_____
Michael J. Agoglia
MORRISON & FOERSTER LLP

2978979

- 14 -

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| **JONATHON ROWLES and GEORGE HOLLOWAY, individually and as class representatives of others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**CHASE HOME FINANCE, LLC,**<br><br>Defendant. | **Civil No. 9:10-cv-01756-MBS**<br>**Hon. Margaret B. Seymour**<br><br>**[PROPOSED] PRELIMINARY**<br>**APPROVAL ORDER** |

These matters having come before the Court upon the Motion of Plaintiffs Jonathon Rowles and George Holloway, individually, and on behalf of a class of persons, for preliminary approval of a settlement reached between plaintiffs and Chase Home Finance, LLC ("Chase" or "defendant") (together, "the Parties"), and upon consideration of the Parties' Settlement Agreement dated April 19, 2011 and the Amended Settlement Agreement dated May 13, 2011 (together, the "Settlement" or "Settlement Agreement"), and the exhibits thereto,

IT IS HEREBY ORDERED AS FOLLOWS:

1.      This Order incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used in this Order will have the same meanings as set forth in the Settlement Agreement, unless otherwise defined in this Order.

2.      Based on the Court's review of the Settlement Agreement, the supporting briefs and declarations, argument of counsel, and the entire record, the Court finds that the proposed Settlement is within the range of possible approval. Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement is granted.

3.      If, for any reason, the Settlement is not finally approved or does not become effective, this provisional approval and class certification Order shall be null and void, and shall not be used or referred to for any purpose in this Action or any other action or proceeding.

4.      Solely for the purpose of settlement in accordance with the Settlement Agreement, and pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, this Court hereby provisionally approves the following settlement class ("Settlement Class"):

> All borrowers with mortgage loans, or secured home equity loans
> or home equity lines of credit, which were active and serviced by
> EMC, Washington Mutual, and/or Chase as of January 1, 2005,
> and to whom Chase has sent or will send an Actual Refund by the
> Class List Close Date.

5.      For settlement purposes only, and after considering the relevant factors in Fed. R. Civ. P. 23, Class Representatives Jonathon Rowles and George Holloway are conditionally designated as representatives of the Settlement Class, and the following law firms and attorneys are conditionally appointed as Class Counsel, and Legal Representatives within the meaning of 50 U.S.C. App. § 519(a)(1), for the Settlement Class:

> Richard A. Harpootlian
> Richard A. Harpootlian, P.A.
> 1410 Laurel Street
> Columbia, South Carolina 29201
>
> William B. Harvey III
> Harvey & Battey, P.A.
> 1001 Craven Street
> Beaufort, South Carolina 29902

6.      The Garden City Group is hereby appointed as Settlement Administrator to administer the notice procedures and other aspects of this proposed Settlement, as more fully set forth in the Settlement Agreement.

7.      Pursuant to Fed. R. Civ. P. 23, the terms of the Settlement Agreement, and the Settlement provided for therein, are preliminarily approved as (a) fair, reasonable, and adequate in light of the relevant factual, legal, practical, and procedural considerations of the Action,

- 2 -

(b) free of collusion to the detriment of Class Members, and (c) within the range of possible final judicial approval, subject to further consideration thereof at the Fairness Hearing described in paragraph 11 of this Order.  Accordingly, the Settlement Agreement and the Settlement are sufficient to warrant notice thereof, as set forth below, and a full hearing on the Settlement.

8.    Defendant is hereby directed to prepare the Class Member list in the manner described in the Settlement Agreement, and to do so within fourteen (14) days after entry of this Order.  Within thirty (30) days after entry of this Order, the Settlement Administrator shall provide notice of the Settlement and of the Fairness Hearing in accordance with the procedures detailed in the Settlement Agreement to each Class Member on the Class Member list at that time by mailing a copy of the Class Notice in the form attached to the Settlement Agreement as Exhibit B, together with a copy of the Special Claim Form, in the form attached to the Settlement Agreement as Exhibit C (together, the "Mailer").  Within five days of the Class List Close Date, the Settlement Administrator shall send the Mailer to any additional Class Members that were not previously on the Class List.  The Settlement Administrator shall format and prepare the Class Notice and the Special Claim Form to conform to the notice provisions of the Settlement Agreement.  The Special Claim Form shall notify the Class Members that it must be postmarked or received not later than February 13, 2012.

9.    Upon review of the Parties' submissions, and the terms of the Settlement Agreement, the Court finds that the Settlement Agreement's plan for class notice, further described in Sections 3.3 and 3.4 of the Settlement Agreement, satisfies the requirements of due process and Fed. R. Civ. P. 23.  That plan is approved and accepted.  This Court further finds that the Class Notice and the Special Claim Form comply with Fed. R. Civ. P. 23 and are appropriate as part of the notice plan and the Settlement, and thus they are hereby approved and adopted.  This Court further finds that no notice other than that identified in the Settlement Agreement is reasonably necessary in this Action.

10.    Any Class Member who wishes to be excluded from the Settlement Class and not be bound by the Settlement Agreement must mail a request for exclusion ("Opt-Out") to the

Settlement Administrator so that it is postmarked or received no later than October 3, 2011. For a Class Member's Opt-Out to be valid, it must be timely, and submitted on the Request to Be Excluded form provided with the Class Notice, or delivered by separate letter, and must: (a) state the name of this lawsuit, *Rowles v. Chase Home Finance, LLC*, No. CV 9:10-1756; (b) state the Class Member's full name and address; (c) contain the Class Member's signature; and (d) unequivocally state the Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, not to participate in the Settlement, and/or to waive all rights to the benefits of the Settlement. Any Class Member who does not submit a timely Opt-Out, and otherwise comply with all requirements for requesting exclusion from the Settlement Class as set forth above and in the Class Notice, shall be bound by the Settlement Agreement, including the Release, as embodied in sections 4.1, 4.2, and 4.3 of the Settlement Agreement, and any Final Judgment entered in the Action. Further, any Class Member who is a successful Opt-Out will be deemed to have waived any rights or benefits under the Settlement, and will not have standing to object to the Settlement or to seek to intervene in the Action.

11.    A hearing (the Fairness Hearing) shall be held before this Court on November 15, 2011, at 10:00 a.m., to hear objections and determine: (i) whether the proposed Settlement and compromise of this Action as set forth in the Settlement Agreement is fair, reasonable, and adequate to the Class Members and should be approved by the Court; (ii) whether the Final Judgment should be entered approving the Settlement; (iii) whether to approve the request of Class Counsel for payment of attorneys' fees and reimbursement of expenses; and (iv) whether to approve the request of Class Representatives for incentive awards. Notice of such hearing shall be provided to Class Members in the fashion described in Section 3.3 of the Settlement Agreement.

12.    Any interested person may appear at the Fairness Hearing to show cause why the proposed Settlement should or should not be approved as fair, reasonable, adequate, and in good faith and/or why the request of Class Counsel for approval of attorneys' fees and expenses and litigation-related reimbursements should or should not be approved as fair and reasonable;

- 4 -

provided, however, that no person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement or the fees, costs, and reimbursements requested by Class Counsel, unless that person has sent or delivered written objections and copies of any supporting papers and briefs so that they are postmarked or received no later than October 3, 2011, to Class Counsel at the above addresses, and to counsel for Chase, Michael J. Agoglia, at Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105-2482. Any Class Member who does not submit an objection in the manner provided above shall be deemed to have waived any objection to the Settlement and shall forever be foreclosed from making any objection to class certification, to the fairness, adequacy, or reasonableness of the Settlement, and to any attorneys' fees and reimbursements approved. Class Counsel shall file any timely received objections or Notices of Intent to Appear at the Fairness Hearing with the Clerk of the Court by October 17, 2011.

13.    All memoranda, affidavits, declarations, and other evidence in support of the request for approval of the Settlement; Class Counsel's request for approval of attorneys' fees, costs and reimbursement of expenses; and Class Representatives' request for approval of incentive awards shall be filed on or before September 16, 2011. Any responses to these requests or objections shall be filed on or before October 31, 2011.

14.    The Court expressly reserves its right to adjourn the Fairness Hearing from time to time without further notice other than to counsel of record and to approve the proposed Settlement and request for approval of attorneys' fees and expenses and request for approval of Class Representatives' incentive awards at or after the originally scheduled Fairness Hearing.

IT IS SO ORDERED.

Dated: _____        _____
                                   HONORABLE MARGARET B. SEYMOUR
                                   UNITED STATES DISTRICT JUDGE

2973934

- 5 -

# Exhibit B

## LEGAL NOTICE BY ORDER OF THE COURT

**IF YOU HAVE A MORTGAGE LOAN OR SECURED HOME EQUITY LOAN OR HOME EQUITY LINE OF CREDIT WHICH WAS ACTIVE AND SERVICED BY EMC, WASHINGTON MUTUAL, AND/OR CHASE HOME FINANCE, LLC AS OF JANUARY 1, 2005, YOU MAY BE ENTITLED TO MONEY FROM A CLASS ACTION SETTLEMENT**

*A FEDERAL COURT ORDERED THIS NOTICE.*
*THIS IS NOT A SOLICITATION FROM A LAWYER.*

- A Settlement has been proposed in a class action lawsuit against Chase Home Finance, LLC ("Chase") over certain protections owed to military servicemembers on their mortgage loans and home equity loans and lines of credit which were serviced by EMC, Washington Mutual, and/or Chase as of January 1, 2005.

- Your legal rights are affected whether or not you respond. ***Read this notice carefully.***

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DO NOTHING** | You will still receive money from Fund I under this Settlement, and you give up your right to file a separate lawsuit against Chase for these claims. You will not be entitled to any additional compensation from Fund II unless you make a timely claim, as explained below. |
| **EXCLUDE YOURSELF** | You can remove yourself from this class action, in which case you will not receive any money from this Settlement, and you will retain your right to file a separate lawsuit against Chase. |
| **OBJECT** | You may remain a class member, but write to the Court and explain why you think the Settlement is not fair, reasonable, and/or adequate. |
| **MAKE A CLAIM FOR ADDITIONAL COMPENSATION** | If you do not exclude yourself, you have the right to make a claim for additional compensation beyond any refund payments you received from Chase and the payment you will receive through Fund I of this Settlement. A person appointed as a Special Master shall decide how much to award individuals who timely submit a claim. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court still must decide whether to approve the Settlement. Benefits will only be provided if the Court approves the Settlement and after any appeals are resolved.

## BASIC INFORMATION

**1.    WHAT IS THIS LAWSUIT ABOUT?**

Plaintiff Jonathon Rowles filed this lawsuit on July 7, 2010 in federal court in the District of South Carolina (Case No. CV 9:10-1756) (the "Action"). On April 21, 2011, a second amended complaint was filed to add George Holloway as a named plaintiff.

***What the Law Requires:***

A federal law, the Servicemembers Civil Relief Act ("SCRA"), provides certain protections to servicemembers' mortgage loans and home equity loans and lines of credit while a servicemember is on active duty and for some period following active duty. The SCRA requires that Chase limit to six percent the interest rate on certain home equity and mortgage loans held by a servicemember, once a servicemember provides notice of his or her active duty status and a copy of orders verifying the same. The interest rate limitation is to be in place for a servicemember's period of active duty, and, beginning July 31, 2008, one year thereafter. The interest rate limitation applies only to home equity and mortgage loans that were originated prior to active duty, and for which a servicemember provided notice and orders of active duty within 180 days of the end of his or her active duty period. The SCRA also provides protection from foreclosure on certain home equity and mortgage loans while a servicemember is on active duty and, beginning July 31, 2008, for nine months following active duty. The foreclosure protection applies only to home equity and mortgage loans that were originated prior to active duty. The SCRA also protects servicemembers from any adverse reporting related to their creditworthiness based solely on invocation of SCRA protection.

***What the Plaintiffs Alleged:***

Plaintiffs claimed that Chase did not systematically or properly reduce the interest rate for eligible loans, and foreclosed upon and negatively reported regarding the creditworthiness of SCRA-protected borrowers. Plaintiffs further claimed that Chase subjected SCRA-protected borrowers to improper collection calls that were the result of Chase's failure to adequately apply SCRA protections. Plaintiffs sought actual, consequential, and punitive damages, in addition to injunctive and declaratory relief.

***How Chase Responded:***

Chase denies all allegations of intentional wrongdoing and contends that it spent, and continues to spend, significant time and resources complying with the SCRA. Upon learning of Rowles's complaint, Chase conducted an internal investigation. In any instance where that investigation revealed that a servicemember potentially did not receive the full protection afforded by the SCRA in connection with the servicing of a home loan since January 1, 2005, Chase has issued, or will issue, a refund check. To help ensure that the refunds included the interest and fees due to servicemembers, the actual refund checks were calculated to be greater than the total fees and interest Chase identified as having been collected in excess of 6% during the borrowers' periods of SCRA protection. In the vast majority of cases, the actual refund check was at least twice that amount. To date, refunds exceeding $6,000,000.00 for approximately 6,000 loans have been issued. The SCRA investigation and refunds are ongoing to ensure servicemembers who were SCRA-eligible as of January 1, 2005, receive a refund. Chase has also corrected any negative credit reporting that occurred during a servicemember's period of SCRA protection.

In addition, and apart from the class recovery outlined below, Chase believes that it has substantially enhanced its SCRA compliance procedures, and it has launched significant programs to further assist servicemembers. Those programs include:

- Foreclosure Remediation: Consistent with its publicly announced policy, Chase will provide, including through debt forgiveness, an estimated $6,400,000.00 and other remedies to Class Members who were the subject of wrongful foreclosures under the SCRA as follows:

  (a) Chase will rescind the foreclosure sale where possible, and forgive the remaining mortgage debt;

  (b) If the foreclosure sale was previously rescinded, Chase will refund any mortgage payments made since the sale was rescinded with interest, and forgive the remaining mortgage debt;

  (c) If the home cannot be returned, Chase will pay the borrower the full value of the home at the time of sale (at the higher of the sale price to the third party or appraised value at the time of that sale), waive any deficiency, and forgive any remaining mortgage debt; and

  (d) In all cases above, Chase will remove all credit reporting relating to the foreclosure and refund any fees or other costs associated with the foreclosure.

- Rate Reduction: Chase has agreed to reduce the interest rate on loans for borrowers eligible for the benefits under Section 527 of the SCRA (limiting the interest rate to 6%) from 6% to 4%, with an estimated value to current SCRA-eligible Class Members of approximately $9,000,000.00 in the first year of that rate reduction.

- Loan Modification: Chase is offering an enhanced loan modification program for all members of the military who have served on active duty as far back as September 11, 2001.

These programs, including the foreclosure remediation, are available to SCRA-eligible borrowers, regardless of whether they are Class Members or choose to opt out of the Class.

## 2.    WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of the plaintiffs or the defendant. Instead, both sides agreed to a Settlement. Settlements avoid the costs and uncertainty of a trial and related appeals, while providing benefits to members of the class. The Class Representatives and their attorneys think the Settlement is best for all class members.

## WHO IS AFFECTED BY THE SETTLEMENT?

**3.    HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?**

According to Chase's records, you are a member of the Settlement class because:

> You are a borrower whose mortgage loan, or secured home equity loan or home equity line of credit, was active and serviced by EMC, Washington Mutual, and/or Chase as of January 1, 2005, and you were sent or will be sent a refund from Chase in connection with its investigation of potential SCRA compliance breaches.

If you meet the class description, you are a Class Member and are entitled to benefits under this Settlement unless you submit a request to be excluded from this class Settlement in the manner described below.

## WHAT ARE THE BENEFITS?

**4.    WHAT DOES THE SETTLEMENT PROVIDE?**

**Cash Recovery:**

There are two funds to pay all Class Member claims in this case: Fund I consists of $12,000,000.00, and Fund II consists of $15,000,000.00.

**Fund I:**

Subject to Court approval of the Settlement, each Class Member participating in the Settlement will be paid an amount based on the initial amount of the refund calculated by Chase. That amount is called the Original Estimated Refund, and in almost all cases that amount was less than the Actual Refund check Chase mailed to Class Members already. Class Members will receive from Fund I either $100.00 or an estimated 6.2 times the Original Estimated Refund, whichever is greater. For example:

| If the Original Estimated Refund was: | Your Estimated Fund I Payment would be: |
|---|---|
| $10 or less | $100 |
| $100 | $620 |
| $500 | $3,100 |
| $1,000 | $6,200 |
| $5,000 | $31,000 |

The actual payments distributed from Fund I for each loan participating in the Settlement shall be subject to a pro rata adjustment by the Settlement Administrator so that the total amount of Fund I shall be exhausted but not exceeded. Any adjustment will reflect the following: (1) a flat payment of at least $100.00; and (2) for all remaining loans that participate in the settlement, a multiplier payment that will exhaust but not exceed the remaining amount in Fund I.

One payment will be made jointly to all co-borrowers on each participating loan. A loan will participate in the Settlement if the Class Members who are borrowers on the loan do not opt

out of the Settlement. If the total number of loans participating in the Settlement exceeds 8,000, then Chase shall increase Fund I by $1,500 for each loan in excess of 8,000 that participates in this Settlement.

**Fund II:**

Class Members who do not properly opt out of the Settlement are eligible to submit the enclosed Special Claim Form for additional consequential damages incurred by Class Members, including, but not limited to, compensation for emotional distress, pain and suffering, economic loss, and/or credit defamation. The Special Claim Form and any accompanying information shall be submitted to the Settlement Administrator on or before February 13, 2012.

The amount you get, if any, from Fund II will be determined by a Special Master appointed by the Court. The Court has appointed as the Special Master in this case Edward Cahn, who served for 23 years as a federal judge, and who is now retired and practicing law at the Blank Rome firm in Philadelphia. After the deadline to submit the Special Claim Form has passed, the Settlement Administrator shall provide all the timely Special Claim Forms and accompanying material to the Special Master. The Special Master's decision shall be final as to who is entitled to such an award, and the amount of any award from Fund II. In making that decision, the Special Master will be guided by his experience, the facts submitted in the Special Claim Form, and any accompanying material you provide in support.

If the total amount of awards granted by the Special Master in connection with Special Claims exceeds $15,000,000.00, the Special Master shall prorate the reduction of the awards so that the aggregate does not exceed that amount. If the $15,000,000.00 cap is reached, Chase shall make up to an additional $500,000.00 available to pay the difference between the original Fund II awards relating to wrongful foreclosures and the amount by which those awards were reduced by such prorating. In no event shall the amount Chase is obligated to pay out of Fund II exceed $15,500,000.00.

If the total amount of awards granted by the Special Master in connection with Special Claims is less than $15,000,000.00 all awards shall be prorated so that the aggregate total of the Special Claims awards will equal, but not exceed, $15,000,000.00. However, the Special Master shall not prorate the awards more than twice their original amount. If, after the Special Master prorates the awards, the Special Claims awards do not exceed the applicable cap, the remainder shall be distributed to designated programs that assist active military, veterans or their families, as approved by the Court.

**5.    ARE THERE OTHER CLASS BENEFITS?**

In addition to the cash benefits explained above, Chase will remove prior derogatory credit reporting it made during Class Members' SCRA protection periods in connection with loans included in the Settlement Class.

## HOW DO YOU GET SETTLEMENT BENEFITS?

**6.    HOW CAN I GET A CASH BENEFIT?**

Unless you exclude yourself from the Class as described below, you need not do anything to receive a payment from Fund I. You will automatically receive a payment from Fund I upon Court approval of this Settlement.

**To obtain a cash benefit from Fund II, you must act on or before February 13, 2012.** By

that date, you must complete the enclosed Special Claim Form and mail it and any accompanying information to the Settlement Administrator at:

*Rowles* SCRA Settlement
c/o The Garden City Group, Inc.
P.O. Box 9737
Dublin, OH 43017-5637

You may also submit the Special Claim Form at www.ChaseSCRASettlement.com.

**SPECIAL CLAIM FORMS THAT ARE NOT POSTMARKED OR RECEIVED ON OR BEFORE FEBRUARY 13, 2012 WILL NOT BE HONORED.**

Within three (3) months from the expiration of the Special Claim submission deadline, the Special Master shall submit to the Court a verified report of Fund II claimants and damages awarded to each. The Special Master will ask the Court for more time to decide these claims, if needed.

### 7.   WHEN WOULD I GET MY CASH BENEFIT?

After the Court approves the Settlement and any appeals have ended. The Court will hold a hearing on **November 15, 2011** to decide whether to approve the Settlement. Even if the Court approves the Settlement, there may still be appeals. It is always uncertain how long it will take for these appeals to be decided. In some cases, the appeals process may take up to a year.

### 8.   WHAT AM I GIVING UP TO GET A BENEFIT UNDER THE SETTLEMENT?

Unless you exclude yourself, you will receive benefits under the Settlement as described in this notice, but you can't be part of any other lawsuit against Chase involving the legal claims that were or could have been brought in this case arising out of the same mortgage servicing transactions. It also means that all of the Court's orders will apply to you and legally bind you. If you do not exclude yourself from the Settlement, you will be bound by the "Release of Claims," explained below, which describes exactly the legal claims that you give up if you get Settlement benefits.

**Release of Claims**

*Upon Final Approval, Class Representatives, each Class Member who has not opted out of the Settlement in accordance with the terms of the Settlement Agreement, and each of their respective executors, representatives, heirs, successors, bankruptcy trustees, guardians, and all those who claim through them or who assert claims on their behalf, will be deemed to have completely released and forever discharged the Released Parties, and each of them, from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability of any and every kind, based on the alleged violation of Servicemembers Civil Relief Act, 50 U.S.C. §§ 501, et seq., in connection with the servicing of loans secured by real property, or any other comparable federal, state, or local law, statute, regulation, or common law, and all claims for monetary, equitable, declaratory, injunctive, or any other form of relief arising thereunder, whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which Class Representatives or any Class Member ever had or now has, resulting from, arising out of, or in any way, directly or indirectly, connected with the claims raised in the Action, or claims which could have been raised in the Action based on the transactional nucleus of facts.*

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a benefit from this Settlement and/or want to maintain your right to sue or continue to sue Chase on your own about the legal issues in this case, you must take steps to exclude yourself. This is called "opting out" of the Settlement.

**9. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?**

To exclude yourself from the Settlement by mail, you must select "I am opting out," sign, and return the "Request to be Excluded" form below, or send a letter stating that you want to be excluded from the Settlement of the *Rowles* case. Be sure to include: (1) the name of this lawsuit, *Rowles v. Chase Home Finance, LLC*, Case No. CV 9:10-1756; (2) your full name and current address; (3) a statement of intention to exclude yourself from the Settlement; and (4) your signature. You must mail your exclusion request so that it is postmarked or received no later than October 3, 2011, to:

*Rowles* SCRA Settlement
c/o The Garden City Group, Inc.
P.O. Box 9737
Dublin, OH 43017-5637

You may also submit the Request to be Excluded at www.ChaseSCRASettlement.com. If you choose to exclude yourself through the website, there is no need to send the Request to be Excluded by mail.

**REQUESTS FOR EXCLUSION THAT ARE NOT POSTMARKED OR RECEIVED ON OR BEFORE OCTOBER 3, 2011, WILL NOT BE HONORED.**

You can't exclude yourself on the phone or by email. You also can't exclude yourself by mailing a request to any other location or after the deadline.

If you exclude yourself and decide to file your own individual lawsuit, you should act quickly, as the time to file such an action is limited.

**10. IF I DON'T EXCLUDE MYSELF, CAN I SUE CHASE FOR THE SAME THING LATER?**

No. Unless you exclude yourself, you give up the right to sue Chase for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* class action in order to continue your own lawsuit. Remember, October 3, 2011 is the deadline by which your Request to be Excluded must be postmarked or received.

**11. IF I EXCLUDE MYSELF, CAN I GET ANY BENEFIT FROM THIS SETTLEMENT?**

No.

## THOSE REPRESENTING YOU

**12. DO I HAVE A LAWYER IN THIS CASE?**

Plaintiffs retained Richard A. Harpootlian, Richard A. Harpootlian, P.A., 1410 Laurel Street,

Columbia, South Carolina 29201, and William B. Harvey III, Harvey & Battey, P.A., 1001 Craven Street, Beaufort, South Carolina 29902, to represent them as Class Counsel, and as Legal Representatives defined by 50 U.S.C. App. § 519(a) of the SCRA ("Section 519"). In connection with the preliminary approval of the Settlement, the Court provisionally appointed these firms to represent you and other Class Members for purposes of considering this Settlement, both as Class Counsel and as Class Members' Legal Representatives, as defined by Section 519. Together, these lawyers are called Class Counsel. You will not be charged by these lawyers for their work on the case. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 13. | HOW WILL THE LAWYERS BE PAID? |
|-----|-------------------------------|

The Court will determine how much to award Class Counsel for attorneys' fees and for costs and expenses they and the plaintiffs incurred in litigating this matter. Class Counsel have asked the Court for an award of $8,000,000.00, and Chase has agreed not to object to their request so long as it does not exceed that amount. Any award of attorneys' fees will be above and beyond benefits paid to the Class and will not, in any way, reduce settlement benefits to which you are entitled. Chase has paid for the costs of this notice to you and the costs of administering the Settlement fund.

If you wish to examine the basis for this attorneys' fee request you may obtain a copy of Class Counsel's preliminary motion for approval of attorneys' fees through the Settlement Website at www.ChaseSCRASettlement.com, by toll free telephone at 1(888) 885-9696, or by mail at *Rowles* SCRA Settlement, c/o The Garden City Group, Inc., P.O. Box 9737, Dublin, OH 43017-5637.

| 14. | ARE THE CLASS REPRESENTATIVES ENTITLED TO A SEPARATE PAYMENT? |
|-----|----------------------------------------------------------------|

As an incentive award for the efforts and time expended in prosecuting this case, Class Counsel have asked the Court to approve an award of $25,000.00 to Plaintiff Rowles and $10,000.00 to Plaintiff Holloway. Chase has agreed not to oppose that request. The Court will determine whether any incentive award will be paid, and its amount.

Plaintiff Rowles also has the right under the Settlement to submit a Special Claim Form for additional damages from Fund II in the form of debt forgiveness for his Chase mortgage loan, which has a balance of $247,000. Chase has agreed not to object to this claim. As with all Fund II awards, the amount ultimately awarded on this claim to Plaintiff Rowles will be decided by the Special Master appointed by the Court. All other awards paid to Class Members from Fund II shall be in the form of a single cash payment.

A decision by the Court or Special Master to award less than an amount requested by plaintiffs shall not be a basis to void any other provision of the Settlement.

As permitted by governing rules and regulations, Plaintiff Rowles will also be allowed to serve as an advisor to Chase's Veterans Advisory Council.

### OBJECTING TO THE SETTLEMENT

| 15. | HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENT? |
|-----|------------------------------------------------------------|

If you're a Class Member, you can object to the Settlement if you think any part of it is not fair, reasonable or adequate. You can and should explain the detailed reasons why you think

the Court should not approve the Settlement, if this is the case. The Court and Class Counsel will consider your views carefully. To object, you must mail a letter stating that you object to the Settlement in the *Rowles* case. Be sure to include: (1) the name of this lawsuit, *Rowles v. Chase Home Finance, LLC*, Case No. CV 9:10-1756; (2) your full name, current address, and telephone number; (3) the reasons you object to the Settlement; and (4) your signature. Mail the objection to the following addresses so that it is postmarked or received no later than October 3, 2011:

| CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|
| Richard A. Harpootlian | Michael J. Agoglia |
| Richard A. Harpootlian, P.A. | Morrison & Foerster LLP |
| 1410 Laurel Street | 425 Market Street |
| Columbia, South Carolina 29201 | San Francisco, California 94105 |

William B. Harvey III
Harvey & Battey, P.A.
1001 Craven Street
Beaufort, South Carolina 29902

Class Counsel will file any objections timely received with the Clerk of the Court by October 17, 2011.

If you wish to speak at the Fairness Hearing, you must follow the steps described in Section 19 below.

**16.    WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you remain in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class, and you get nothing under this Settlement. If you exclude yourself, you can pursue your own claim against Chase, but you have no basis to object because this case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend, and you may ask to speak, but you don't have to.

**17.    WHEN AND WHERE WILL THE COURT DECIDE TO APPROVE THE SETTLEMENT?**

**The Court will hold a Fairness Hearing on November 15, 2011.** The hearing will be held at 10:00 a.m. in Courtroom V of the United States District Court for the District of South Carolina, 901 Richland Street, Columbia, South Carolina 29201. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have submitted timely requests to speak at the hearing. The Court may also decide how much Chase will be ordered to pay Class Counsel and Class Representatives. After the hearing, the Court will decide whether to finally approve the Settlement.

**18.    DO I HAVE TO COME TO THE HEARING?**

No. Class Counsel will answer questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time to the proper addresses, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 19.    MAY I SPEAK AT THE HEARING?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in the *Rowles* Case." Be sure to include your name, address, telephone number, and signature. Your Notice of Intention to Appear must be sent to Class Counsel and Defense Counsel, at the addresses provided in Section 15 above, and must be postmarked by October 3, 2011. Class Counsel will file any Notices of Intent to Appear timely received with the Clerk of the Court by October 17, 2011. You cannot speak at the hearing if you have excluded yourself.

## IF YOU DO NOTHING

### 20.    WHAT HAPPENS IF I DO NOTHING?

You will still receive money from Fund I under this Settlement, and you give up your right to file a separate lawsuit against Chase based on the alleged violation of Servicemembers Civil Relief Act, 50 U.S.C. §§ 501, *et seq.*, in connection with the servicing of loans secured by real property, or any other comparable federal, state, or local law. If you do not submit a completed Special Claim Form, you will not receive money from Fund II.

## GETTING MORE INFORMATION

### 21.    ARE THERE MORE DETAILS ABOUT THE SETTLEMENT? HOW DO I GET MORE INFORMATION?

This notice summarizes the proposed Settlement. For more details, including to obtain a copy of the complaint, Settlement Agreement, and other governing Settlement documents, you may contact the Settlement Administrator through the Settlement Website at www.ChaseSCRASettlement.com, by toll free telephone at 1(888) 885-9696, or by mail at *Rowles* SCRA Settlement, c/o The Garden City Group, Inc., P.O. Box 9737, Dublin, OH 43017-5637. For the cost of accessing court documents from the courthouse, you may also obtain a copy of the Settlement Agreement at the office of the Court Clerk, 85 Broad Street, Charleston, South Carolina 29401, during the hours of 8:30 a.m. to 4:30 p.m., Monday through Friday, except holidays. In addition, you may update your mailing address at www.ChaseSCRASettlement.com or by mailing a notice of a change of address to the Settlement Administrator. You can also submit the Special Claim Form and accompanying documentation, or the Request to be Excluded, at the website.

If you have questions about the case, you can call or write to Richard A. Harpootlian, Richard A. Harpootlian, P.A., 1410 Laurel Street, Columbia, South Carolina 29201, telephone: (803) 252-4848, and William B. Harvey III, Harvey & Battey, P.A., 1001 Craven Street, Beaufort, South Carolina 29902, telephone: (843) 524-3109.

## *Rowles v. Chase Home Finance, LLC*, Case No. CV 9:10-1756

### <u>Request to Be Excluded — Receive No Settlement Benefits</u>

### You may not choose this option if you sign the Special Claim Form.

To exclude yourself from the Settlement, you must select below "I am opting out," sign below, and return this form; send a letter stating that you want to be excluded from the Settlement of the *Rowles* case; or do so at www.ChaseSCRASettlement.com.  If you choose not to use this form, and instead choose to exclude yourself by sending a letter, be sure to include: (1) the name of this lawsuit, *Rowles v. Chase Home Finance, LLC*, Case No. CV 9:10-1756; (2) your full name and current address; (3) a statement of intention to exclude yourself from the Settlement; and (4) your signature.  You must mail your exclusion request so that it is postmarked or received no later than October 3, 2011, to:

*Rowles* SCRA Settlement
c/o The Garden City Group, Inc.
P.O. Box 9737
Dublin, OH 43017-5637

Check here if you wish to be excluded from the Settlement: _____  I am opting out.

If your name or address has changed from the information printed on the envelope in which you received this Notice, please make any corrections in the box to the right:

Signature: _____          Date: _____

2973957

# Exhibit C

# SPECIAL CLAIM FORM

Settlement of *Rowles v. Chase Home Finance, LLC*

## ACT NOW!  SPECIAL CLAIM FORMS POSTMARKED AFTER FEBRUARY 13, 2012 MAY NOT BE HONORED.

If you have not excluded yourself from the Settlement by opting out, and you experienced additional consequential damages, including, but not limited to, emotional distress, pain and suffering, economic loss, and/or credit defamation, as a result of Chase's alleged failure to provide the protections due under the Servicemembers Civil Relief Act, you may be entitled to a payment from Fund II. The amount you are awarded, if any, from Fund II will be determined by the Special Master appointed by the Court. In making that decision, the Special Master will be guided by his experience, the facts submitted in this Special Claim Form, and any accompanying material you provide in support thereof.

To be considered, this Special Claim Form together with any supporting documents must be mailed to the Settlement Administrator by **February 13, 2012** at the following address:

*Rowles* SCRA Settlement
c/o The Garden City Group, Inc.
P.O. Box 9737
Dublin, OH 43017-5637

If your name or address has changed from the information printed above, please make any corrections in the box to the right:

Please describe in detail below the reasons why you believe you are entitled to additional compensation from Fund II as a result of Chase's servicing of your mortgage or home equity loan. Keep in mind that Fund II is intended to provide compensation for injuries and losses suffered as a result of Chase's alleged failures to properly apply the protections under the SCRA, above and beyond any refund previously received or any compensation you are due from Fund I. For example, did you experience any mental or physical suffering that required medical attention? Did you receive collection calls in connection with this loan? Did Chase negatively report your credit history to credit bureaus in connection with this loan? If so, did that affect you in any other transactions? Were you the subject of foreclosure activities?

Feel free to provide additional pages if the space below is not enough. You should submit copies of any documents that support your claim. Such documents may include receipts, bills, statements, or any other evidence of damages you have suffered. The Special Master will review your claim and may request additional information. If you consent to having the Special Master do so by telephone, please include your telephone number below. You may contact the Special Master to provide any additional information by email at _____, or by leaving a message at [insert toll free number]. The Special Master's decision about whether you are entitled to an award, and the amount of any award, will be final and not subject to appeal.

The following facts support my claim:

-1-

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

By signing below, you certify under penalty of perjury that the statements above, and any additional information submitted in support of this claim, are truthful to the best of your knowledge.


Signature: _____          Date: _____

# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| JONATHON ROWLES and GEORGE HOLLOWAY, individually and as class representatives of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHASE HOME FINANCE, LLC, <br><br> Defendant. | Civil No. 9:10-cv-01756-MBS <br> Hon. Margaret B. Seymour <br><br> [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE |

The Settlement Agreement between the Class Representatives and Defendant Chase Home Finance, LLC ("Chase") provides for the settlement of this lawsuit on behalf of the Class Representatives and the Class Members, subject to approval by this Court of its terms and to entry of this Final Judgment.

Pursuant to an Order dated May ___, 2011 ("Preliminary Approval Order"), the Court scheduled a hearing (the "Fairness Hearing") to consider the approval of the Settlement Agreement and the settlement reflected in it.

A Fairness Hearing was held before this Court on November 15, 2011, to consider, among other things, whether the settlement should be approved by this Court as fair, reasonable, and adequate, whether Class Counsel's request for approval of attorneys' fees and expenses is reasonable and should be approved by this Court, and whether Class Representatives' request for approval of incentive awards is reasonable and should be approved by this Court.

**NOW THEREFORE, GOOD CAUSE APPEARING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     This Order incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used in this Order will have the same meanings as set forth in the Settlement Agreement, unless otherwise defined in this Order.

2.     The Court finds that the Settlement Agreement is the product of good-faith, arm's-length negotiations by the Parties, each of whom was represented by experienced counsel.

3.     The Court finds that the class proposed for purposes of the settlement meets the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), and hereby certifies a Settlement Class in the Action as follows:

> All borrowers with mortgage loans, or secured home equity loans or home equity lines of credit, which were active and serviced by EMC, Washington Mutual, and/or Chase as of January 1, 2005, and to whom Chase has sent or will send an Actual Refund by the Class List Close Date.

4.     This Court approves the settlement and all terms set forth in the Settlement Agreement and finds that the settlement is, in all respects, fair, reasonable, adequate, and in the best interests of the Class Members, and the Parties to the Settlement Agreement are directed to consummate and perform its terms.

5.     The Parties dispute the validity of the claims in this litigation, and their dispute underscores not only the uncertainty of the outcome but also why the Court finds the Settlement Agreement to be fair, reasonable, adequate, and in the best interests of the Class Members. Beyond facing uncertainty regarding the resolution of those issues, by continuing to litigate, Class Members would also face the challenge of surviving an appeal of any class certification order entered in this Action, and any other rulings rendered during trial. The relief negotiated by the Parties includes automatic payment to Class Members of their *pro rata* share of Fund I,

- 2 -

which consists of $12,000,000.00, and the ability for Class Members to claim further payment

from Fund II, which consists of $15,000,000.00. If the total number of loans participating in the

Settlement exceeds 8,000, then Chase shall increase Fund I by $1,500 for each loan in excess of

8,000 that participates in this Settlement. If full payment of any Fund II awards by the Special

Master relating to additional damages arising out of any wrongful foreclosure under the SCRA

would exceed the $15,000,000.00 cap, Chase shall make available in Fund II the additional

amount needed to pay the remaining portion of those awards up to a total additional contribution

to Fund II of $500,000.00. Any remaining monies in Fund II will, in accordance with the

Settlement and as directed by the Special Master, be provided to the following Designated

Programs agreed upon by the Parties and approved by the Court:

6.    The Parties have presented evidence that the cost to Chase of providing this class

relief is approximately $27,500,000.00, and that additional class benefits have been conferred

upon class members with an approximate value of $21,400,000.00.

7.    For all the above reasons, the Court finds that the uncertainties of continued

litigation in the trial and the appellate courts, as well as the tremendous expense associated with

it, weigh in favor of approval of the Settlement Agreement.

8.    Any and all objections to the Settlement Agreement and Class Counsel's request

for approval of attorneys' fees and expenses have been considered and are hereby found to be

without merit and are overruled.

- 3 -

9.      The Court appoints Edward Cahn to serve as Special Master for all purposes specified in the Settlement, and to provide the verified report on the amounts awarded from Fund II by _____.

10.     This entire Action is dismissed with prejudice, and without costs to any party, except as expressly approved in paragraphs 12 and 13 below.

11.     Upon the Effective Date, the Class Representatives, and each Class Member who has not opted out of the settlement in accordance with the terms of the Settlement Agreement, and each of their respective executors, representatives, heirs, successors, bankruptcy trustees, guardians, and all those who claim through them or who assert claims on their behalf, will be deemed to have completely released and forever discharged the Released Parties, and each of them, from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability of any and every kind, based on the alleged violation of the Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501, *et seq.*, in connection with the servicing of loans secured by real property, or any other comparable federal, state, or local law, statute, regulation, or common law, and all claims for monetary, equitable, declaratory, injunctive, or any other form of relief arising thereunder, whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which Class Representatives or any Class Member ever had or now has, resulting from, arising out of or in any way, directly or indirectly, connected with the claims raised in the Action, or claims which could have been raised in the Action based on the same transactional nucleus of facts.

12.     Class Counsel's request for approval of attorneys' fees and costs in the amount of $_____ is approved.

- 4 -

13.     Class Representative Rowles's request for approval of an incentive award in the amount of $_____ is approved. Class Representative Holloway's request for approval of an incentive award in the amount of $_____ is approved.

14.     Any person or entity wishing to appeal this Final Judgment shall post a bond with this Court in the amount of $_____ as a condition to prosecuting the appeal.

15.     If the Effective Date, as defined in the Settlement Agreement, does not occur for any reason whatsoever, this Final Judgment and the Preliminary Approval Order shall be deemed vacated and shall have no force and effect whatsoever.

16.     Without affecting the finality of this Final Judgment in any way, this Court retains continuing jurisdiction for the purpose of enforcing the Settlement Agreement and this Final Judgment, and other matters related or ancillary to the foregoing.

17.     The Parties having so agreed, good cause appearing, and there being no just reason for delay, it is expressly directed that this Final Judgment and Order of Dismissal with Prejudice be, and hereby is, entered as a final and appealable order.

IT IS SO ORDERED.

Dated: _____         _____
                                     HONORABLE MARGARET B. SEYMOUR
                                     UNITED STATES DISTRICT JUDGE

2973922